[No. B074562. Second Dist., Div. Six. Dec. 14, 1993.]

RAE J. TINTOCALIS, Plaintiff and Respondent, v.
JAMES TINTOCALIS, as Personal Representative, etc., et al., Defendants
and Appellants.

## COUNSEL

Stanley W. Abbott for Defendants and Appellants.

Thomas P. Anderle and Robert L. Bletcher for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—Orders for spousal support ordinarily terminate upon the death of the obligor spouse. (Civ. Code, § 4801, subd. (b).)[1] To remedy the financial burden that may flow from such a death, the Legislature has enacted section 4801.4. This section gives the trial court discretion to order the obligor spouse to maintain life insurance for the benefit of the supported spouse ". . . where it is just and reasonable . . . so that the supported spouse will not be left without means for support in the event that the order for support is terminated by the death of the party required to make the payment of support." (§ 4801.4.) "As a remedial statute, it must be liberally construed 'to effectuate its object and purpose, and to suppress the mischief at which it is directed.' [Citations.]" (*Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 356 [185 Cal.Rptr. 453, 650 P.2d 328].)

John Tintocalis and James Tintocalis, individually and as the personal representatives of husband, the decedent, appeal from a summary judgment ordering the estate to pay wife $100,000 plus interest from the day of husband's death. Because the facts are undisputed, we review the summary judgment on a de novo basis. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

Husband and wife separated in 1988, following a 25-year marriage. Wife filed a petition for marital dissolution and discovered that the premium on

---

[1]All statutory references are to the Civil Code unless otherwise stated. We refer to Christos A. Tintocalis and Rae J. Tintocalis as husband and wife for reader clarity.

husband's life insurance policy, issued by Kemper Insurance Companies (Kemper) in 1982, was due and owing.[2] The Kemper policy listed her as the beneficiary.

On May 4, 1989, wife filed a motion to enjoin husband from canceling, transferring, disposing of, or changing the beneficiary designation on the policy. Her supporting declaration stated: "My husband recently delivered to me a notice of life insurance premium due the Kemper Insurance on his life. The due date was April 28, 1989. I returned it to him and asked him to pay it and to maintain the status quo until this matter is resolved. . . . [¶] . . . I request that my husband be required to maintain all life insurance, automobile insurance, and so forth, pending resolution of this matter."

At the May 26, 1989, hearing, husband stipulated to an order enjoining either party from canceling, transferring, disposing, or changing the beneficiary designation on the Kemper policy. He agreed to maintain the policy if he could exchange his Chevrolet Corvette automobile for a new Corvette. Wife agreed.

Husband never paid the insurance premium. The case proceeded to trial on December 11, 1989. The trial court ordered husband to pay $3,800 per month spousal support and "immediately secure" and "maintain" a $100,000 life insurance policy. The judgment, filed February 14, 1990, was entered nunc pro tunc as of December 31, 1989, and provided, inter alia: "[Husband] shall *immediately secure* a life insurance policy in the amount of $100,000 insuring his life; the beneficiary of said insurance policy shall be the [wife]. [Husband] has the option of acquiring either a term life insurance policy or a whole life policy. [Husband] *shall maintain said policy in full force and effect* so long as his obligation to pay spousal support to [wife] exists, or until further Order of Court." (Italics added.)

Rather than reinstate the Kemper policy, husband purchased a five-year renewable term life insurance policy from Allied Life Insurance Company. The policy stated: "If the Insured dies by suicide, while sane or insane, within two years from the Policy Date, our liability will be limited to the premiums paid." Husband committed suicide on April 29, 1991, 14 months after purchasing the Allied policy. Allied refunded the premiums to husband's estate.

Wife brought suit against the estate and husband's heirs for violation of the court order and constructive trust. Appellants demurred on the ground

---

[2] The policy had a 31-day grace period and stated in pertinent part: "Grace Period for Payment of Premiums. A grace of thirty-one days without interest charge will be allowed in the payment of every premium after the first. If any premium is not paid on or before the date it falls due, this Policy is in default but shall continue in force during the grace period."

that no cause of action was stated. Their theory was that husband breached no duty of care because "[n]o court order specifically directed Dr. Tintocalis to refrain from committing suicide." The trial court overruled the demurrer.

Wife thereafter brought a motion for summary judgment on the theory that husband breached a court-imposed obligation to maintain a $100,000 life insurance policy. The trial court agreed, saying: "He cancelled the life insurance with a bullet." Summary judgment was entered on the fifth cause of action for constructive trust and unjust enrichment. This appeal followed.

■ Appellants cite section 4801, subdivision (b), for the proposition that support obligations terminate with the death of the obligor spouse. They theorize that before his death, husband complied with the support order and paid the premiums on the Allied policy. Appellants contend that the obligation to "provide" life insurance was satisfied and terminated upon husband's death. The argument, however, fails. The order to "maintain" life insurance carries the obligation not to do anything which would interfere with benefits being paid thereunder.

Appellants concede that the trial court was vested with the power to order husband to purchase and maintain life insurance. (*In re Marriage of O'Connell* (1992) 8 Cal.App.4th 565, 571 [10 Cal.Rptr.2d 334] [husband ordered to add wife and child as beneficiaries on life insurance policy]; *In re Marriage of Ziegler* (1989) 207 Cal.App.3d 788, 791 [255 Cal.Rptr. 100] [husband ordered to maintain military survivor benefit plan for wife]; *In re Marriage of Gonzalez* (1985) 168 Cal.App.3d 1021, 1025 [214 Cal.Rptr. 634, 54 A.L.R.4th 1195] [award of husband's term life insurance policy to wife].) Pursuant to section 4801.4, the obligor spouse may be ordered to purchase an annuity or maintain life insurance. Life insurance, like an annuity, assures that the supported spouse will not be left without means for support. It is a substitute for support following the death of the obligor spouse. (*In re Marriage of O'Connell, supra*, 8 Cal.App.4th 565, 572-573; Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1993) ¶¶ 6:92.2, 6:92.5, pp. 6-185–6-186.)

Appellants nevertheless argue that the order to maintain life insurance was merely a security device and terminated with the support obligation. A similar argument was rejected in *In re Marriage of Ziegler, supra*, 207 Cal.App.3d 788.) "The stated purpose of the statute [section 4801.4] is to insure that 'the supported spouse will not be left without means for support in the event that the order for support is terminated by the death of the party required to make the payment of support.' In other words, the statute's purpose is to insure support is provided for the supported spouse *after* the

obligor dies. It has nothing to do with providing 'security' for the payment of support owed during the obligor's lifetime." (207 Cal.App.3d at p. 793.)

Husband stipulated to a pretrial order to pay the premiums on the Kemper policy. He failed to do so. At trial, he was ordered to "immediately secure" and "maintain" life insurance. Had he not purchased life insurance, the obligation would have been chargable against his estate. (E.g., *Lucas* v. *Elliot* (1992) 3 Cal.App.4th 888 [4 Cal.Rptr.2d 746] [breach of martial settlement agreement to provide life insurance].) Husband could not do an end-run around the order by purchasing an inferior policy and committing suicide. The claim that he "maintained" the policy by paying the premiums is only partially true. He took some steps to maintain the policy by paying the premiums but he thereafter defeated the policy by committing suicide. Husband's actions cannot reasonably be equated with "maintaining" the policy.

Appellants, however, assert that the only life insurance policies available to husband excluded coverage for suicide. Not so. It was undisputed that the Kemper policy provided full coverage. The declaration of husband's insurance broker indicates that husband could have reinstated the Kemper policy by bringing the premiums current. Instead, husband purchased the Allied policy which provided less coverage at a reduced cost.

We emphasize that a constructive trust action is equitable in nature. (*Pacific Lumber Co.* v. *Superior Court* (1990) 226 Cal.App.3d 371, 378 [276 Cal.Rptr. 425].) The record is silent on husband's suicide motivation.[3] We do not believe, however, that intent should be determinative although it could be a factor.[4] We are guided by equitable considerations. We need not enter the philsophical debate on the propriety of sucide. For purposes of a constructive trust action, "[n]o one can take advantage of his own wrong." (§ 3517.) "No one should suffer by the act of another." (§ 3520.) "For every wrong there is a remedy." (§ 3523.) These maxims of jurisprudence serve as guideposts of equity and fairness and compel affirmance of the judgment.

---

[3]Dissolution of marriage is not a happy time for the parties and their families. The parties may become dispondent and, on occasion, commit suicide. However, it does not inexorably follow that every suicide committed by a party to a dissolution proceeding is motivated by the breakup of the marriage. It may be that the suicide is motivated by considerations wholly independent therefrom, e.g., by poor health.

[4]This case would be easy to decide if husband had left a suicide note indicating that he was aware of the suicide exclusion in the policy, that he wanted to make sure that his former spouse would not receive the benefits of the policy, and that he was killing himself so that she should suffer financially. If these were the facts, we could easily say that he intentionally interfered with the court's order and that his estate should be penalized therefor.

From wife's financial perspective, it was "wrong" for husband to commit suicide. She should not suffer a $100,000 loss because of his volitional act. She has suffered from this wrong and there is a remedy: his estate is financially responsible for the loss.

The family law court intended that wife have financial support in the event of husband's death. To that end, it ordered him to secure and maintain the insurance policy so that after his death, wife would have some measure of financial support. This was consistent with the Legislative direction of section 4801.4 and reasonable under the facts and circumstances of the case.

Appellants insist, however, that there was no family law order forbidding him to commit suicide, that he therefore did not violate the court order, and that his estate should not be penalized. Were we to agree with appellant, a spouse subject to a section 4801.4 order would have the power to veto a court-imposed obligation to provide life insurance. This would thwart the will of the Legislature and, in essence, defeat the salutary goal of section 4801.4.

■ Where, as here, the obligor spouse violates an order to maintain life insurance, a constructive trust may be imposed against his or her estate. (§§ 2223, 2224; *Cramer* v. *Biddison* (1968) 257 Cal.App.2d 720, 724 [65 Cal.Rptr. 624] [constructive trust imposed after husband changed beneficiary designation on life insurance policy]; *Franklin Life Ins. Co.* v. *Kitchens* (1967) 249 Cal.App.2d 623, 636 [57 Cal.Rptr. 652] [constructive trust imposed when husband failed to name children as beneficiaries].) ■ An insured cannot defeat the equitable right of a beneficiary by failing to act or taking advantage of his own wrong. (*Waxman* v. *Citizens Nat. Trust & Sav. Bk.* (1954) 123 Cal.App.2d 145, 149 [266 P.2d 48].)

■ Wife's request for sanctions is denied. While we have ruled in her favor, the appeal is not frivolous. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of the adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) The issue here tendered is unique and wife has not demonstrated an improper motive for taking the appeal. The law provides a remedy for the delayed payment of the $100,000, and the trial court provided the remedy—legal interest which runs from April 29, 1991. We cannot say that any reasonable attorney would agree that this appeal is totally and completely without merit.

The judgment is affirmed. Costs on appeal are awarded to her. Her request for sanctions is denied.

Stone (S. J.), P. J., and Gilbert, J., concurred.