[No. D055202. Fourth Dist., Div. One. Mar. 23, 2010.]

RACHEL CURRY LEADER et al., Plaintiffs and Appellants, v.
TERRY LEE CORDS, Defendant and Respondent.

 

COUNSEL

Beamer, Lauth, Steinley & Bond and Stephen A. Bond for Plaintiffs and Appellants.

Jerry D. Cluff for Defendant and Respondent.

OPINION

**McCONNELL, P. J.**—Probate Code[1] section 17211, subdivision (b) gives the probate court discretion to award attorney fees to a trust beneficiary who "contests the trustee's account," if the court determines the trustee's opposition to the contest was "without reasonable cause and in bad faith." The trustee's account here revealed that the trust had remaining assets and no liabilities. The trustee, however, refused to make a final distribution based on a collateral dispute that did not pertain to the trust. The beneficiaries successfully petitioned the probate court for an order compelling the trustee to distribute the remaining assets. The sole question on appeal is whether the court erred by finding section 17211, subdivision (b) is inapplicable as a matter of law because the proceeding does not constitute a contest of the trustee's account. We answer the question in the affirmative. We reverse the court's order to the extent it denies the beneficiaries attorney fees, and direct the court to hold further proceedings on the factual issue of bad faith.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1991 Glen Cords and Alice Sterling Cords,[2] as settlors and trustees, established a revocable living trust known as the Glen Cords and Alice Sterling Cords 1991 Trust (the Trust). The Trust was amended in 1994 and 1999. The Trust requires the trustee to render annual accounts and a final account to Trust beneficiaries.

Glen died in 1999, after which Alice served as sole trustee of the Trust. Alice died in 2001, and her son Terry Lee Cords became the sole successor trustee. The Trust provided that, after Alice's death, the remaining Trust estate was to be distributed to her two children, Terry and Carol Curry Johnson, with the issue of a deceased child taking his or her share. Carol died in 2002, and her two children, Rachel Curry Leader and Adam Curry, succeeded to her interest in the Trust.

---

[1] Further undesignated statutory references are to the Probate Code.

[2] Because some parties share surnames, we use first names for convenience and to avoid confusion.

In November 2008 Rachel and Adam filed a petition in the probate court under section 17200, for an order compelling Terry to make a final distribution, and finding he committed breaches of trust. The petition also sought an order compelling Terry to personally reimburse Rachel and Adam $19,227.70 for attorney fees and costs, and precluding Terry from paying his fees and costs from the Trust.

The petition alleged that after Carol's death, Terry provided Rachel and Adam "with no information regarding the Trust and his administration of it." Rachel and Adam learned from Terry's accountant that the Trust was holding Bank of America stock, and in February 2006 they asked him to distribute their share of the stock to them. Terry made excuses for not complying, but he finally did so in April 2007. Rachel and Adam also learned from Terry's accountant that he was still holding cash in the Trust, and that he had not provided any accounting for his administration of the Trust since December 31, 2002.

The petition alleged that on January 12, 2007, Rachel and Adam demanded that Terry provide them with an accounting within 60 days, for the period January 1, 2003, to the present. At Terry's request they granted him an extension to April 30, 2007, and then another extension to May 15. On May 15, he produced an accounting through December 31, 2006, which showed there was $75,001.15 in cash in the Trust. The account did not list any Trust debts.

Further, the petition alleged that on May 29, 2007, Rachel and Adam's attorney contacted Terry's attorney to ask about distribution of the remaining Trust assets. "Terry's counsel explained that Terry was willing to make distribution of the cash only as part of a 'global settlement.' He said that Terry had a 'very reasonable proposal' that he wants to make that involved Alice's jewelry."

The petition alleged that Alice's jewelry (which included items she once owned and items Glen once owned) was not included in the Trust, and her will provided that Terry and Carol were to divide it. Shortly after Alice's death, Terry and Carol allegedly divided the jewelry in accordance with a letter they found in her home: Terry took the jewelry Glen had owned and Carol took the jewelry Alice had owned. Carol took her share to Alabama, where she lived, and had it appraised. After Carol's death in 2002, Terry met with Rachel in Alabama and "insisted that she give him all of the appraisals of the jewelry in her possession." Rachel heard nothing more about the jewelry until 2006, when she and Adam asked Terry to distribute their share of the Bank of America stock. Terry then asserted an interest in the jewelry.

The petition also alleged that in a July 17, 2007 letter, Terry proposed the following settlement: Rachel and Adam were to deliver to him "several items of Alice's jewelry"; they were to buy a diamond ring for his daughter for $22,500 from their share of the remaining cash in the Trust; he was to receive approximately $25,000 of the remaining cash, and they were to receive approximately $11,000 of the cash. Terry's claim to any of the jewelry was not a Trust matter, however, and he had not made a timely claim against Carol's estate.

In his objection to the petition, Terry conceded that Alice's jewelry was not an asset of the Trust, and was to be distributed under the terms of her will. The objection states Terry and Carol disagreed on how to divide the jewelry, she took it without his consent, and Rachel and Adam rejected his demands for a division of the jewelry. Further, as the executor of Alice's will, Terry "has attempted . . . to distribute the assets subject to the will and the [T]rust according to the terms of the integrated estate plan as his mother directed and all proposals made were an attempt to achieve distribution as close as is possible."

At a January 7, 2009 hearing, Rachel and Adam's attorney, Martin Steinley, advised the court: ". . . Mr. Galvin [(Terry's attorney)] and I spoke outside, and we think that the matter would most efficiently be resolved if we bifurcated the issues. The threshold or central issue is whether [Terry], the trustee, can withhold distribution of the remaining trust assets *based upon a claim he believes that he has [a right] to jewelry that passed under [Alice's] will.* [¶] He's withholding distribution of the trust assets on the basis that he should be entitled to more of the trust assets because he believes he did not receive his fair share of the jewelry that passed under the terms of the will. That is the threshold issue, the central issue I think from which all other issues will fairly quickly be resolved." (Italics added.)

Steinley also stated: "Related to that issue are the issues of the trustee's attorney's fees, whether he should be able to pay those attorney's fees out of the Trust or not and the issue of Rachel and Adam's attorney's fees and whether [Terry] personally should be responsible for those attorney's fees. And those two issues, are, of course, related to the first issue as to whether he should have been able to do what he's trying to do, and that is withhold distribution of the remaining trust assets on the basis of that claim when there's no other reason for him to be withholding the assets."

Steinley asked the court to specially set a hearing on the issues of distribution and attorney fees. Galvin stated, "I would concur in general, yes." The court made a briefing schedule and set a hearing.

Despite Galvin's concession, in Terry's memorandum of points and authorities he denied his refusal to make a final distribution of Trust assets was related to the jewelry. Rather, he claimed he was retaining cash in the Trust as an "administrative reserve" because Rachel and Adam requested attorney fees in this litigation.

At the February 10 hearing, the court noted Terry's theory seemed to be that he was withholding funds in the Trust because Rachel and Adam were suing him, but they were suing him because he was withholding funds. The court's tentative reasoning was to order distribution of the funds immediately.

After taking the matter under submission, the court issued an order on March 23, 2009, which states the "catalyst of this dispute appears to be the disposition of jewelry which originally belonged to Alice." The jewelry, however, was not part of the Trust and was thus "irrelevant to the issue of the distribution of the Trust now before the court." The order states that by conditioning the distribution of remaining Trust assets on the settlement of the jewelry dispute, Terry violated section 16004, subdivision (c). Further, the court rejected Terry's tardy "administrative reserve" theory as lacking any evidentiary support, and found he violated section 16004.5 by retaining a reserve. The court ordered Terry to distribute half of the remaining Trust assets to Rachel and Adam, and the other half to himself. The court denied Rachel and Adam's request for attorney fees under section 17211, subdivision (b), as "this is not an action on an accounting." The court also denied Terry attorney fees from the Trust because he acted improperly in opposing their petition.

## DISCUSSION

### I

■ Preliminarily, we dispose of Terry's argument that the "one judgment rule" bars this appeal. "The one judgment rule has been articulated thusly: '[A]s a general rule there can be only one final judgment in a single action.' [Citation.] A final, ordinarily single, judgment is a prerequisite to appealing from an action, its purpose to avoid piecemeal appeals." (*Cuevas v. Truline Corp.* (2004) 118 Cal.App.4th 56, 60 [12 Cal.Rptr.3d 706].)

■ An appeal may be taken from "an order made appealable by the . . . Probate Code." (Code Civ. Proc., § 904.1, subd. (a)(10).) Under the Probate Code, an appeal lies from an order refusing to authorize or allow "payment of compensation or expenses of an attorney." (§ 1300, subd. (e); see also *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1450, fn. 5 [77 Cal.Rptr.2d 463] [attorney whose petition for extraordinary compensation was denied waited

until the estate was settled to appeal the denial; court held appeal was untimely under former § 7240, subd. (*l*) (now § 1300, subd. (e))].) An appeal also lies from any final order rendered under section 17200, with exceptions inapplicable here. (§ 1304, subd. (a).) Accordingly, the appeal is proper.

## II

### A

Rachel and Adam contend the court erred by finding that as a matter of law section 17211, subdivision (b) is inapplicable because their petition was not a contest of Terry's account, and rather was "based upon the theory of breach of trust."

Probate Code provisions pertaining to the administration of trusts appear at section 16000 et seq. "The trustee has a duty to keep the beneficiaries of the trust reasonably informed of the trust and its administration." (§ 16060.) The trustee "shall account at least annually, [and] at the termination of the trust . . . ." (§ 16062, subd. (a).) An account furnished under section 16062 must contain certain information, such as a statement of receipts and disbursements, a statement of assets and liabilities, and the amount of the trustee's compensation. (§ 16063, subd. (a)(1)–(3).) Further, the account must contain a "statement that the recipient of the account may petition the court pursuant to Section 17200 to obtain a court review of the account and of the acts of the trustee," and a "statement that claims against the trustee for breach of trust may not be made after the expiration of three years from the date the beneficiary receives an account or report disclosing facts giving rise to the claim." (§ 16063, subd. (a)(5), (6).)

Under section 17200, a trust beneficiary may petition the court "concerning the internal affairs of the trust." (§ 17200, subd. (a).) Proceedings concerning the internal affairs of a trust include, but are not limited to, proceedings for the purpose of "[s]ettling the accounts and passing upon the acts of the trustee." (§ 17200, subd. (b)(5).)

Trust beneficiaries must ordinarily pay their own attorney fees in challenging the trustee's conduct, even when they are successful. (*Estate of Bonaccorsi* (1999) 69 Cal.App.4th 462, 473 [81 Cal.Rptr.2d 604] [estate accounting].)[3] Section 17211, subdivision (b), however, provides the following exception to the rule: "If a beneficiary *contests the trustee's account* and

---

[3] Code of Civil Procedure section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ."

the court determines that the trustee's opposition to the contest was without reasonable cause and in bad faith, the court may award the contestant the costs of the contestant and other expenses and costs of litigation, including attorney's fees, incurred to contest the account. The amount awarded shall be a charge against the compensation or other interest of the trustee in the trust. The trustee shall be personally liable and on the bond, if any, for any amount that remains unsatisfied." (Italics added.)[4]

■ Issues of statutory interpretation are subject to our independent review. (*Board of Retirement v. Lewis* (1990) 217 Cal.App.3d 956, 964 [266 Cal.Rptr. 225].) "A court's overriding purpose in construing a statute is to ascertain legislative intent and to give the statute a reasonable construction conforming to that intent. [Citation.] In interpreting a statute to determine legislative intent, a court looks first to the words of the statute and gives them their usual and ordinary meaning. [Citation.] Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished." (*Home Depot, U.S.A., Inc. v. Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1600–1601 [49 Cal.Rptr.2d 302].)

■ Terry contends the phrase "contests the trustee's account" in section 17211, subdivision (b) is unambiguous and thus requires no construction. "When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it." (*Morton Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 716 [104 Cal.Rptr.2d 815].) We do not agree, however, that the phrase "contests the trustee's account" is unambiguous. A statute is ambiguous if it is " 'reasonably susceptible of two disputed meanings.' " (*Mayo v. Department of Motor Vehicles* (1987) 193 Cal.App.3d 406, 408 [238 Cal.Rptr. 465].) As discussed below, we find the phrase is reasonably susceptible of Rachel and Adam's interpretation. Thus, if we accept Terry's interpretation of the phrase as reasonable, the phrase is reasonably susceptible of more than one meaning.

The Probate Code does not define the phrase "contests the trustee's account" in section 17211, subdivision (b). Further, there is a dearth of published authority on section 17211, and the parties cite no opinion interpreting the phrase.

Rachel and Adam contend we must construe the phrase liberally because section 17211 is a remedial statute. They assert that read liberally, the phrase

---

[4] Reciprocally, subdivision (a) of section 17211 gives the court discretion to award attorney fees to the trustee when a beneficiary contests the trustee's account without reasonable cause and in bad faith.

applies to their petition because Terry's account revealed the Trust had remaining cash and no offsetting liabilities, and thus he was obligated to make a final distribution.

Terry counters that we must read the phrase narrowly to mean an "an actual contest of an accounting." He does not explain what he means by "an actual contest of an accounting," and that language is no more illuminating than the phrase "contests the trustee's account" in section 17211, subdivision (b). He presumably means the statutory language applies only to an action that challenges a trustee's account insofar as it reports required items such as receipts and distributions, and assets and liabilities. In other words, if the account is accurate as to those items, any action beneficiaries may bring in response to the account cannot be considered a contest of the account within the meaning of the statute.

■ We agree with Rachel and Adam that section 17211, subdivision (b) is a remedial statute: it is intended to protect beneficiaries who contest trustees' accounts from liability for attorney fees incurred as a result of trustees' unreasonable and bad faith oppositions. "A remedial statute is one which provides a means for the enforcement of a right or the redress of a wrong." (*Rich v. Maples* (1867) 33 Cal. 102, 105; see *Miller v. Hart* (1938) 11 Cal.2d 739, 741 [81 P.2d 923] [remedial statute affords new and additional means of enforcing right].)

■ The Legislature enacted section 17211 in 1996. (See Stats. 1996, ch. 563, § 31, p. 3158.) The Estate Planning, Trust and Probate Law Section of the California State Bar proposed the legislation to harmonize with section 11003, subdivisions (a) and (b), which provide for attorney fees awards in the context of litigation over trustees' accounts in probate estate administrations. (*Chatard v. Oveross* (2009) 179 Cal.App.4th, 1098 [101 Cal.Rptr.3d 883].) The group explained: " 'It is advisable to enact a counterpart to these provisions which would apply in settlement of a trustee's account. Without a specific counterpart in the trust law, parties challenging or defending a trustee's accounts are governed by Civil Code Procedure Sections 128.5 et seq. which provide, generally, that a trial court may order a party or the party's attorney, or both to pay any reasonable expenses incurred by another party as a result of bad faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. Frivolous is defined as "totally and completely without merit or for the sole purpose of harassing an opposing party." The standards of CCP Sections 128.5 et seq. appear to be more narrow than those incorporated into Probate Code Section 11003. In the context of a challenge of a fiduciary's account, *the broader standards of Section 11003 should be adopted and should apply whether the contest occurs during the*

*administration of a probate estate or upon settlement of a trustee's account.'*" (*Chatard v. Oveross, supra,* 179 Cal.App.4th at pp. 1109–1110, italics added.)

■ A remedial statute "'must be liberally construed "to effectuate its object and purpose, and to suppress the mischief at which it is directed." [Citations.]'" (*Tintocalis v. Tintocalis* (1993) 20 Cal.App.4th 1590, 1592 [25 Cal.Rptr.2d 655], quoting *Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 356 [185 Cal.Rptr. 453, 650 P.2d 328].) Construing section 17211, subdivision (b) liberally, we conclude the phrase "contest[] [of] the trustee's account" includes Rachel and Adam's petition for distribution. A required component of Terry's account was a disclosure of Trust assets and liabilities, which showed he was withholding approximately $75,000 cash without any offsetting liabilities. As Rachel and Adam explain, the account "revealed with clarity that the term of the trust had expired, its purposes had been fulfilled, and the only act that remained for Terry to carry out as trustee was final distribution." After receiving the account, Rachel and Adam tried unsuccessfully for nearly two years to obtain their share of the remaining Trust assets, but Terry refused to make a final distribution based on a collateral issue unrelated to the Trust, the dispute over Alice's jewelry. Rachel and Adam were finally forced to bring this action.[5]

Under section 11001, "[a]ll matters relating to an account may be contested for cause shown . . . ." This statute applies to the administration of probate estates, but it supports a liberal interpretation of section 17211, subdivision (b), since this statute is patterned after section 11003, which pertains to probate estates. Certainly, Rachel and Adam's petition is a matter "relating to an account."

■ Further, in the context of trust administration, it is established that the trustee's "duty to account for funds and for property is not satisfied by the rendering of a paper account showing the disposition made of the trust property. Obviously, the mere furnishing of an account showing the receipt of trust funds and the use made thereof does not fulfill the duties of a trustee. He is under the further constraint to deliver the property to his beneficiary, since the latter is the rightful owner." (*Kinert v. Wright* (1947) 81 Cal.App.2d 919, 924 [185 P.2d 364].) Terry's duty to account was inseparable from his duty to carry out the terms of the Trust by distributing the remaining Trust assets, and Rachel and Adam's petition arose from and was directly related to his

---

[5] We disagree with the statement in the court's order that "[b]ut for this litigation, [Terry] would have distributed the Trust." The record only permits a finding that Terry refused to distribute the remaining Trust assets based on the jewelry dispute, and his belated "administrative reserve" argument was unfounded. Moreover, the order shows the court recognized that the crux of the problem was Terry's claim to some of the jewelry.

account. Terry's account should have, but did not, indicate a forthcoming distribution of remaining Trust assets to the beneficiaries. A beneficiary may, of course, contest a trustee's account on the basis of a distribution made from the Trust, and in our view a challenge to an omitted distribution equally qualifies as a "contest[] [of] the trustee's account." (§ 17211, subd. (b).)[6]

We do not envision that the Legislature intended to leave beneficiaries in Rachel and Adam's position without potential recourse under section 17211, subdivision (b), for the unreasonable and bad faith opposition to a petition for distribution, merely because they do not challenge the accuracy of the account's enumerated receipts and distributions, or assets and liabilities. Such a narrow reading of 17211, subdivision (b) would defeat its remedial purpose. Accordingly, we conclude the court misinterpreted section 17211, subdivision (b) as inapplicable to Rachel and Adam's petition action as a matter of law.

We reject Terry's assertion that the petition does not qualify as a contest of the trustee's account under section 17211, subdivision (b) because in addition to an order for final distribution they sought a determination that his conduct constituted breaches of trust. In conjunction with an action on the trustee's account, beneficiaries may challenge the trustee's conduct. (See § 16063, subd. (a)(5); see also *Estate of Fain* (1999) 75 Cal.App.4th 973, 991 [89 Cal.Rptr.2d 618] [showing contest of account may be based on breach of fiduciary duty].) Further, contrary to his assertion, our holding does not render section 17211, subdivision (b) applicable to every beneficiary action under section 17200.

B

Rachel and Adam ask us to direct the probate court to enter an order entitling them to attorney fees and costs under section 17211, subdivision (b), and to remand the matter solely for a determination as to the reasonable amount of the award. They assert that although the court did not expressly find Terry acted unreasonably and in bad faith, "its findings are thoroughly consistent with such a characterization, and this court should simply complete the trial court's analysis." While the record indicates the court found Terry's

---

[6] In *Estate of McMillin* (1956) 46 Cal.2d 121 [292 P.2d 881], the court held in the context of probate estates that a creditor could object to a trustee's final accounts based on omissions of the creditor's statements from the accounts. Former section 927, the precursor to section 11003 (see Historical and Statutory Notes, 54 West's Ann. Prob. Code (1991 ed.) foll. § 11003, p. 166) provided that on the filing of an account by an administrator " 'any person interested in the estate may appear and file written exceptions to the account, and contest the same.' " (*Estate of McMillin*, at p. 127.) The court explained that "[w]hile the statute does not provide as to the form or contents of the 'written exceptions,' it would seem appropriate to give the term a broad scope. Thus the 'written exceptions' may include exceptions not only to what is affirmatively stated in an account, but also to what is omitted therefrom." (*Id.* at p. 128.)

conduct unreasonable, it does not show the court found him in bad faith, an issue the court did not reach. Whether Terry acted in bad faith is a factual question for the probate court's determination in the first instance. (*Hall v. Regents of University of California* (1996) 43 Cal.App.4th 1580, 1586 [51 Cal.Rptr.2d 387].)

## DISPOSITION

The March 23, 2009 order is reversed insofar as it denies Rachel and Adam attorney fees and costs under section 17211, subdivision (b). The matter is remanded to the probate court for further proceedings in accordance with this opinion. Rachel and Adam are entitled to costs on appeal.

Aaron, J., concurred. Huffman J., concurred in the result.

Respondent's petition for review by the Supreme court was denied June 9, 2010, S182335.