**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1029-16T1

SANDRA WOYTAS, Administratrix
of the Estate of TIMOTHY G.
WOYTAS, deceased; and SANDRA
WOYTAS, individually,

    Plaintiff-Appellant,

v.

GREENWOOD TREE EXPERTS, INC.,
GREENWOOD LAWN SERVICES, INC.,
GREENWOOD CONTINUITY TRUST,
JOHN R. WOYTAS, III, RAYMOND J.
WOYTAS, DAVID W. DUBEE, ROBERT
W. DUBEE, WHIPPANY FIRE
DEPARTMENT (a/k/a Township of
Hanover Fire District #2) and
LINCOLN NATIONAL LIFE INSURANCE
COMPANY,

    Defendants,

and

CHRISTINA WOYTAS, individually
and as guardian for T.M. WOYTAS,
C.T. WOYTAS and J.T. WOYTAS,

    Defendant-Respondent.

_____

Argued May 1, 2018 — Decided July 13, 2018

Before Judges Hoffman, Gilson and Mitterhoff.

On appeal from Superior Court of New Jersey, Chancery Division, Morris County, Docket Nos. C-000001-16 and P-2257-2014.

Bonnie C. Frost argued the cause for appellant (Einhorn, Harris, Ascher, Barbarito & Frost, PC, attorneys; Bonnie C. Frost, of counsel and on the briefs; Gary R. Botwinick and Matheu D. Nunn, on the briefs).

Lauren F. Iannaccone argued the cause for respondent (Connell Foley, LLP, attorneys; Thomas J. O'Leary, of counsel and on the brief; Lauren F. Iannaccone, on the brief).

PER CURIAM

Plaintiff Sandra Woytas, surviving widow of Timothy Woytas (decedent) and the administrator of his estate, appeals from an August 30, 2016 Chancery Division order granting summary judgment to defendant Christina Woytas,[1] decedent's ex-wife, individually and on behalf of her and decedent's three children. We review the court's summary judgment disposition de novo, considering whether the evidence, "when viewed in the light most favorable to the non-moving party, [is] sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Following our review of the record, and in

---

[1] For ease of reference, and intending no disrespect, we refer to the defendants by their first names.

light of applicable law, we are convinced the court correctly granted summary judgment in favor of Christina and her children, and affirm.

I

Christina and decedent divorced in February 2013. Their dual judgment of divorce incorporated their marital separation agreement (MSA), which required decedent maintain $750,000 in life insurance naming their three children as beneficiaries, and $400,000 in life insurance naming Christina as beneficiary. The MSA also included a handwritten, initialed provision stating: "In the event either party fails to maintain the life insurance . . . such party's estate shall be liable for any outstanding obligations owed under this agreement." The MSA further obligated decedent pay Christina alimony of $60,000 per year for twelve years, and $1551 monthly in child support "until such time as one of the children [is] emancipated."

In accordance with the MSA, decedent obtained a $750,000 life insurance policy from Symetra Life Insurance Company (Symetra), naming his children as equal beneficiaries and Christina as trustee. Also pursuant to the MSA, decedent secured a $100,000 life insurance policy with Symetra, naming Christina as beneficiary. Decedent also continued to maintain a pre-existing

$300,000 life insurance policy that named Christina as beneficiary.

Decedent subsequently married plaintiff. After their marriage, he obtained a $500,000 life insurance policy from AIG naming plaintiff as beneficiary. Plaintiff alleges decedent secured that policy to support her and her two children from a prior marriage because she lost her right to lifetime alimony when she married him.

Decedent committed suicide in August 2014. He died intestate, and in September 2014, the Morris County Surrogate appointed plaintiff as administrator of decedent's estate.

Christina received $300,000 from the life insurance policy that predated the MSA; however, Symetra refused to pay the $100,000 and $750,000 policies based on two-year suicide exclusions. Instead, they returned decedent's paid premiums plus interest to Christina and the children. AIG similarly refused payment on the $500,000 policy naming plaintiff as beneficiary.

Christina asserted a personal claim against decedent's estate for $100,000, and as guardian on behalf of the children, she asserted a separate claim for $750,000, representing the unpaid life insurance owed under the MSA. Defendant John Woytas, decedent's father, asserted a claim totaling $58,800 for unpaid portions of a promissory note and a personal loan he made to

4                                                          A-1029-16T1

decedent.[2]  Plaintiff asserted a $500,000 claim for the unpaid life insurance policy naming her as beneficiary.

In January 2016, plaintiff, individually and as administrator, filed a verified complaint in the Probate Part, asserting claims against: 1) Greenwood Tree Experts, Inc. and Greenwood Lawn Services, Inc., two corporations in which decedent owned equal one-third shares with defendants Raymond Woytas, his brother, and David Dubee, his cousin; and 2) Greenwood Continuity Trust, a trust established in a buy-sell agreement (collectively, Greenwood defendants).  Plaintiff sought payment into the estate for decedent's share of the business and payments owed.  Plaintiff eventually settled all claims against the Greenwood defendants for $550,000.

In June 2016, Christina filed a motion for summary judgment seeking, in relevant part, an order declaring decedent breached the MSA by committing suicide, and that the children's claim for $750,000 and her claim for $100,000 had priority over all other claims against the estate.  She also sought to prevent plaintiff from receiving a statutory commission as administrator, claiming plaintiff breached her fiduciary duties.

---

[2]  We previously granted defendant leave to supplement the record to reflect that John Woytas later released all claims against the estate after the entry of the order under review; as a result, he did not participate in this appeal.

Before the court decided Christina's summary judgment motion, plaintiff, as administrator, filed a verified complaint seeking a judgment declaring the estate insolvent because it lacked sufficient assets to pay decedent's debts. She filed an accounting indicating the estate had $573,593.33 in assets, including: $550,000 from a settlement with the Greenwood defendants; $20,749.25 from decedent's length-of-service award program with the Whippany Fire Department; and $2844.08 from an account decedent had with a stock broker.[3] The accounting listed $126,626.86 in administration expenses, leaving $446,966.47 available for distribution to the estate's claimants. Because the claims against the estate totaled $1,408,800, the accounting proposed paying each claim proportionately at 31.7 cents on the dollar.

Following oral argument on Christina's motion for summary judgment, the court issued a written opinion and accompanying orders partially granting and partially denying that motion.[4] The judge found that by committing suicide, decedent failed to maintain

---

[3]  The accounting also listed two assets that passed outside of the estate — a $285,205.56 payment from decedent's individual retirement account, which plaintiff received, and the $300,000 in life insurance benefits, which Christina received.

[4]  The judge initially granted Christina's motion to prohibit plaintiff from receiving a statutory commission as administrator of decedent's estate; however, the court later granted plaintiff's motion for reconsideration, and awarded her a $23,075 commission.

the required life insurance, and therefore breached the MSA. He also found the claims of Christina and the children against the estate had priority over all other claims. Lastly, the judge found the children were entitled to the full $750,000 amount of the life insurance policy, as specified in the MSA; however, because the estate was insolvent, the children received approximately $454,467 — the entire corpus of the estate after accounting for various fees and expenses.

On October 28, 2016, the court entered an order directing the Surrogate to disburse funds for decedent's two younger children to Christina as trustee.[5]

## II

On appeal, plaintiff first argues the court erred when it determined decedent's suicide was a breach of the MSA and summary judgment was not appropriate because there exists a disputed issue of material fact. We disagree.

The question of whether suicide constitutes a breach of an MSA is an issue of first impression in New Jersey. Relying on persuasive authority, the trial court held decedent was obligated to maintain life insurance, and by committing suicide, he breached

---

[5] The oldest child had already withdrawn her portion of the funds, after turning eighteen.

that obligation. In arriving at that decision, the court relied on Tintocalis v. Tintocalis, 25 Cal. Rptr. 2d 655, 658-59 (Cal. Ct. App. 1993).

The facts of Tintocalis are analogous to the instant action and concern California's counterpart to N.J.S.A. 2A:34-25, which permits the court to order a spouse "to maintain life insurance for the protection of the former spouse . . . or the children of the marriage . . . in the event of the payer spouse's . . . death." Tintocalis, 25 Cal. Rptr. 2d at 656. In Tintocalis, the court ordered the decedent to "'immediately secure' and 'maintain'" life insurance and name his ex-wife as the policy's beneficiary. Id. at 657. The decedent complied in securing the life insurance; however, he committed suicide fourteen months later, thus invalidating the policy. Ibid. The ex-wife asserted a claim against the decedent's estate for the value of the policy, arguing the decedent breached the court's order by committing suicide. Ibid. The court agreed, holding the decedent "took some steps to maintain the policy by paying the premiums but he thereafter defeated the policy by committing suicide. [The decedent's] actions cannot reasonably be equated with 'maintaining' the policy." Id. at 658.

We are persuaded by the Tintocalis court's reasoning and agree with the court's holding that "[t]he order to 'maintain'

life insurance carries the obligation not to do anything [that] would interfere with the benefits being paid thereunder." Id. at 657. We are further guided by our Supreme Court's explanation of the purpose of N.J.S.A. 2A:34-25's life insurance provision, which is to ensure a sufficient fund for the payor spouse's support obligation should he or she die before fulfilling that responsibility. Jacobitti v. Jacobitti, 135 N.J. 571, 581-82 (1994). With these principles in mind, we hold decedent breached the MSA when, by committing suicide, he failed to maintain the requisite life insurance policies. To hold otherwise would permit decedent to evade his support obligations, contrary to the Legislature's intent in enacting N.J.S.A. 2A:34-25.

Moreover, we reject plaintiff's argument that decedent's intent in committing suicide has bearing on our disposition. Decedent failed to comply with the plain language of the MSA. Accordingly, as per the MSA, decedent's estate remains liable for that failure.

### III

We next consider plaintiff's claim that the court erred by finding that under the MSA, the children were entitled to the entire $750,000 face value of the life insurance policy from decedent's estate. Plaintiff contends the court awarded the children a windfall because $750,000 exceeds the maximum amount

of child support decedent would have paid had he lived until all three children were emancipated.

A spousal agreement is viewed with "a predisposition in favor of its validity and enforceability." Petersen v. Petersen, 85 N.J. 638, 642 (1981); see also Quinn v. Quinn, 225 N.J. 34, 44-45 (2016) (internal quotation marks and citation omitted) ("Therefore, fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed."). There is no legal or equitable basis to reform the parties' MSA absent "unconscionability, fraud, or overreaching in the negotiations" of the MSA. N.H. v. H.H., 418 N.J. Super. 262, 282 (App. Div. 2011) (citation omitted). A marital agreement is enforceable in equity, and the language of the MSA controls so long as it is fair and just. Id. at 279-80 (citing Eaton v. Grau, 368 N.J. Super. 215, 224 (App. Div. 2004)).

In the instant matter, the terms of the MSA expressly provide that decedent "shall . . . obtain a life insurance policy with a face value of $750,000 naming each child as a beneficiary in an equal amount and naming the Wife as the trustee of this policy. As each child is emancipated, the face value of this policy may be reduced . . . ." The MSA also provided decedent would pay the children's medical insurance, and contribute to their medical expenses, extracurricular activities, cell phone bills, and

college expenses. Thus, based on the plain language of the MSA, decedent was required to maintain a life insurance policy to comprehensively support his children, which includes more than merely child support payments, but also medical and college expenses.

Accordingly, we reject plaintiff's argument that, at most, the children are only entitled to the cumulation of decedent's monthly child support obligation. Decedent committed suicide prior to any of his children's emancipation. The terms of the MSA dictate the children are entitled to the benefits of a $750,000 life insurance policy. Awarding the children less than that amount would impermissibly rewrite the MSA. Thus, plaintiff's argument lacks persuasion, and in so holding, we need not address defendants' claims regarding plaintiff's alleged waiver of the argument.

IV

Lastly, plaintiff contends the court erred in finding the children's claims against the estate were entitled to priority over her claim; to wit, she argues the court impermissibly categorized future child support payments as a judgment, thereby elevating them above unsecured creditors. Plaintiff's argument lacks persuasion.

The existence of a court order establishing a life insurance obligation gives it priority over a subsequent contractual arrangement made by a decedent. See Della Terza v. Estate of Della Terza, 276 N.J. Super. 46, 49 (App. Div. 1994). A parent obligated to maintain life insurance for the support of a child cannot effectively terminate that obligation by disregarding or taking an action inconsistent with that commitment. See Prudential Ins. Co. of Am. v. Prashker, 201 N.J. Super. 553, 557 (1985) ("[A]n insured by reliance on standard insurance law is not able to frustrate a judgment of a court.").

Furthermore, the Chancery Division's Probate Part is a court of equity. In re Estate of Stockdale, 196 N.J. 275, 304 (2008). "Applying principles of fairness and justice, a judge sitting in a court of equity has a broad range of discretion to fashion the appropriate remedy in order to vindicate a wrong consistent with . . . principles of fairness, justice, and the law." Kingsdorf v. Kingsdorf, 351 N.J. Super. 144, 157 (App. Div. 2002) (quoting Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999)). An MSA incorporated "into a divorce decree . . . if found to be fair and just . . . is specifically enforceable in equity." N.H., 418 N.J. Super. at 279-80 (quoting Eaton, 368 N.J. Super. at 224).

The State has recognized an important "interest in assuring continued support for unemancipated children, even after the death of a parent." Della Terza, 276 N.J. Super. at 49 (citing Grotsky v. Grotsky, 58 N.J. 354, 361 (1971)). "A person who is required to be named as the beneficiary of life insurance under a divorce decree has a vested equitable interest in such life insurance." Konczyk v. Konczyk, 367 N.J. Super. 551, 561 (App. Div. 2003).

Moreover, N.J.S.A. 2A:17-56.23b(a) provides:

> A judgment for child support entered pursuant to . . . [N.J.S.A.] 2A:17-56.23a . . . and docketed with the Clerk of the Superior Court shall be a lien against the net proceeds of any settlement negotiated prior or subsequent to the filing of a lawsuit, civil judgment, civil arbitration award, inheritance or workers' compensation award. The lien shall have priority over all other levies and garnishments against the net proceeds of any settlement negotiated prior or subsequent to the filing of a lawsuit, civil judgment, civil arbitration award, inheritance or workers' compensation award unless otherwise provided by the Superior Court, Chancery Division, Family Part. . . . The lien shall stay the distribution of the net proceeds to the prevailing party or beneficiary until the child support judgment is satisfied.

N.J.S.A. 3B:22-2 states that when the assets of an estate are insufficient to satisfy all claims against it, creditors should be paid in the following order:

      a. Reasonable funeral expenses;

      b. Cost and expenses of administration;

c. Debts for the reasonable value of services rendered to the decedent by the Office of the Public Guardian for Elderly Adults;

d. Debts and taxes with preference under federal law or the laws of this State;

e. Reasonable medical and hospital expenses of the last illness of the decedent, including compensation of persons attending him [or her];

f. Judgments entered against the decedent according to the priorities of their entries respectively; [and]

g. All other claims.

The statute further provides, "no preference shall be given in the payment of any claim over any other claim of the same class, and a claim due and payable shall not be entitled to a preference over claims not due." N.J.S.A. 3B:22-2.

Plaintiff misconstrues the court's priority analysis. She claims the court granted Christina and the children a "post-death" judgment for future child support, and then used that judgment as a basis for finding they were entitled to priority under N.J.S.A. 3B:22-2(f). The court, however, did not use the judgment it entered in favor of the children to find they were entitled to priority. Rather, it found the MSA's requirement that decedent maintain life insurance for his children's benefit, which was incorporated into the dual judgment of divorce, constituted a

14

child support order, and decedent breached that order when he failed to maintain the required life insurance by committing suicide.

We agree with the Chancery judge, and hold the children's claims against the estate have priority.[6] The MSA — incorporated into the final judgment of divorce — clearly indicates decedent and Christina intended for the children to receive $750,000 in life insurance proceeds for support in the event of decedent's death. Decedent's suicide precluded payment of those proceeds; yet, the MSA specified that decedent's estate was liable for his life insurance obligations. In contrast, plaintiff contends decedent made her an oral promise to maintain life insurance that named her as beneficiary because she lost her right to permanent alimony when she married decedent. Unlike decedent's obligations under the MSA, this promise was not reduced to a judgment.

Accordingly, the MSA clearly establishes the children's equitable interest in the proceeds of the life insurance policy, and basic principles of equity mandate that their claims in the estate have priority over all other creditors. See DeCeglia v.

---

[6] Because our analysis diverges from the Chancery judge, we note that "we review orders and not, strictly speaking, reasons that support them. . . . [A] correct result, even if predicated on an erroneous basis in fact or in law, will not be overturned on appeal." El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 169 (App. Div. 2005).

Estate of Colletti, 265 N.J. Super. 128, 140 (App. Div. 1993) (quoting Aetna Life Ins. Co. v. Bunt, 754 P.2d 993, 998 (Wash. 1988)) ("[C]laims for child support . . . are not equivalent to the claims of 'creditors' . . . . [Rather, t]he basis for child support is the natural obligation of a parent to support his or her children; the validity of [the] claim does not depend upon either contract or judgment.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION