Filed 6/5/15  Gonzalez v. Thomas CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MARIA GONZALEZ,<br><br>    Petitioner and Appellant,<br><br>    v.<br><br>GABRIELA THOMAS, as trustee, etc.,<br><br>    Objector and Respondent. | B250492<br><br>(Los Angeles County<br>Super. Ct. No. BP115299) |

APPEAL from orders of the Superior Court of Los Angeles County.  Reva Goetz, Judge.  Dismissed in part and affirmed in part.

Lang, Hanigan & Carvalho and Timothy R. Hanigan for Petitioner and Appellant.

Negele & Associates, James R. Negele and Jonathan R. Hickman for Objector and Respondent.

\* \* \* \* \* \* \* \* \* \*

Appellant Maria Gonzalez was married to Carlos Gonzalez at the time of his death. Decedent's assets were held in a trust which predated his marriage to appellant, and was never amended to include her. Following his death, appellant asserted an interest in the trust's assets, including decedent's separate property home.

Appellant first sued respondent trustee, Gabriela Thomas, in civil court, claiming decedent had promised the home to her and seeking to quiet title in her favor. After several rounds of pleading, and after the trial court sustained respondent's demurrer to portions of the second amended complaint, appellant filed a verified petition in the probate court seeking to be designated as an omitted spouse under Probate Code section 21610.

Respondent filed a verified petition agreeing that appellant was an omitted spouse, and seeking an order to recover her attorney fees, as well as an order that any distributions from the trust would be subject to the trust's expenses. On March 21, 2012, the probate court awarded respondent her legal fees, entered an order determining the percentage of each beneficiary's share in the trust (including appellant as an omitted spouse), and ordered that all distributions would be made after payment of court-approved trust expenses. Appellant did not timely appeal this order.

On June 5, 2013, following respondent's petition for a final accounting, the court approved additional trust expenses, from which appellant timely appealed.

In this appeal, appellant challenges the probate court's March 21, 2012 order awarding respondent her attorney fees. Appellant also challenges the probate court's June 5, 2013 order awarding additional attorney fees, and other trust administration costs. She contends that *all* of the attorney fees were awarded in error. She also contends that her share of the trust property should be exempt from trust expenses, because she was not a beneficiary under the trust.

Respondent has moved to dismiss portions of the appeal, reasoning that the March 21, 2012 order was immediately appealable, and that no timely appeal was made. She also urges that the matters decided in the March 21 order may not be challenged on appeal from the June 5, 2013 order. We agree that the March 21 order awarding attorney

2

fees and ordering that any distribution of the trust assets would be subject to trust expenses was an appealable order, and that appellant cannot challenge those orders in this appeal. What remains of this appeal is appellant's challenge to the reasonableness of trust expenses of $14,413.28 awarded by the probate court. Finding no error with that order, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Decedent established a living trust in 1999, naming his seven children as beneficiaries, including his daughter, respondent, who is the successor trustee. Decedent's home, located on MacNeil Street in Mission Hills, was deeded to the trust. Decedent married appellant in 2004. However, the trust was never amended to include her as a beneficiary. Decedent passed away on January 31, 2008.

On February 21, 2008, appellant sued respondent individually, and in her capacity as successor trustee, in civil court, asserting causes of action for breach of oral contract, specific performance, quiet title, declaratory relief, imposition of constructive trust, conversion, assault, and false imprisonment. Appellant alleged that decedent had promised appellant that upon his death, "the Property and all of his other assets would belong" to her. She alleged that respondent did not honor this agreement, and failed to acknowledge appellant's exclusive ownership of the property. Appellant sought to quiet title to the property in her name.

Respondent demurred to the complaint, and two more rounds of pleading ensued. In her first amended complaint, which was filed before the hearing on the demurrer, appellant newly alleged, as an alternative basis for relief, that she was an omitted spouse under Probate Code section 21610. Respondent again demurred on various grounds, conceding that appellant's claim to be an omitted spouse "may or may not be true," but identifying other deficiencies in the pleading, which are not relevant here. The trial court sustained the demurrer in part, and overruled it in part.

In the second amended complaint, appellant sought declaratory relief as to her status as an omitted spouse under the trust, and appended a copy of the trust to the complaint. Respondent again demurred, this time contending that the probate court had

jurisdiction over appellant's claims. The demurrer also asked the trial court to expunge the lis pendens that appellant recorded on the MacNeil property. The trial court sustained the demurrer, but concluded that a demurrer was not a proper mechanism to challenge the lis pendens. Appellant dismissed her complaint, without prejudice, on March 4, 2009. However, appellant did not withdraw the lis pendens.

On March 3, 2009, appellant filed a petition in probate court for orders declaring her an omitted spouse, declaring her entitlement to an intestate share of the trust's assets, and compelling an accounting of the trust's assets and liabilities. On June 12, 2009, she filed a first amended petition, newly seeking an order "partitioning and compelling the sale of the real and personal property held by the trust so that proceeds may be divided among the parties in accordance with their respective interests therein." Appellant alleged that upon decedent's death, title to his property passed to her under California's intestacy laws as an omitted spouse.

On October 21, 2011, respondent filed a petition for orders affecting the administration of the trust. The petition conceded appellant's status as an omitted spouse, and sought orders removing the lis pendens, granting respondent authority to sell the MacNeil property, approving the expenses for the administration of the estate, determining the distribution of shares of the trust (including an approval of appellant's share, subject to the administrative expenses of the estate), and surcharging appellant's share of the estate for respondent's costs associated with appellant's "bad faith" prosecution of her civil action. The petition alleged that respondent had incurred legal fees of $34,735.48 in defending appellant's civil action. A total of $77,093.28 in legal fees and costs had been expended by the trust through June 30, 2011. Respondent argued that appellant's position that she was entitled to all of decedent's property was a "challeng[e] [to] the trust." Respondent also claimed that appellant was wrongfully seeking to avoid her share of the estate's administration expenses (by way of her petition seeking partition).

4

Included with the petition was a declaration by respondent's counsel, and a compendium of exhibits, including the various pleadings and court orders related to the civil action, and redacted invoices documenting the trust's legal expenses.

Appellant filed objections to respondent's petition. She argued that the administration expenses sought by the petition were excessive, and that in any event, her share of the trust assets passed to her upon decedent's death, was not part of the trust, and that she is not a beneficiary of the trust; therefore, appellant reasoned that her share should not be subject to the administration expenses of the estate.

In reply, respondent argued that appellant's share of the estate was subject to administrative costs and creditor claims to the same extent as the other beneficiaries.

The hearing on both petitions was held on November 18, 2011. No reporter's transcript of this hearing has been provided on appeal. On March 21, 2012, the probate court issued its order following the hearing. In that order, the court found as follows: As to respondent's petition, "The parties have agreed that the MacNeil Property be sold immediately upon the terms set forth below, so that the net proceeds generated therefrom will go into the Trust to be divided and distributed in accordance with their respective interests therein; [¶] . . . The parties have agreed that to facilitate the sale of the MacNeil Property, [appellant] shall withdraw her lis pendens recorded against the MacNeil Property; [¶] . . . The court approves the payment of $77,093.25 in attorney's fees to counsel for [respondent] based on the Court's review of Exhibits 14 and 16 to the Petition as administrative costs and fees of the Trust. All other administrative costs and fee requests are deferred and must be clearly specified and supported by line item and a fee declaration in compliance with C.R.C. § 7.76 at the time a Petition for final account is filed." The court also approved a distribution schedule for all of the beneficiaries of the trust, and for appellant, for the proceeds of the sale of the MacNeil property and decedent's car. Appellant was to receive 33 percent of the net proceeds. However, the court ordered that "[a]ll distributions are to be made after court approved expenses are deducted from the gross amount of trust available for distribution." The court denied

5

respondent's request to surcharge appellant's share of the estate for damages caused by her civil action, finding it was not brought in bad faith.

As to appellant's petition, the court found that appellant was entitled to receive a "statutory intestate ownership share in all the Trust assets . . . ." The net proceeds of the sale of the MacNeil property and decedent's car would be deposited in a trust account jointly controlled by appellant and respondent. "No distributions shall be made from said joint trust account unless both the Petitioner and [Objector] agree, or upon order of the Court." The court denied appellant's claim for the costs of partition.

The court set a status conference for the status of the sale of the house, as well as for a final account, for May 18, 2012. However, the status conference was continued a number of times.

On April 19, 2013, respondent filed a verified petition for the settlement of the account, and for an order approving compensation for respondent, attorney fees, and final distribution of the trust's assets. The petition reported that the MacNeil property had sold for $185,000, which was significantly less than anticipated, due to market conditions and unknown structural problems with the house. Decedent's car sold for $7,000. Also, 61 shares of MetLife had sold for $3,257.23.

The petition documented loans that trust beneficiaries had made to the trust for over $97,000, to help fund the litigation expenses incurred in defending appellant's civil action. Respondent argued that "the bulk of the loan proceeds were reasonably used to pay attorney's fees incurred to defend the trust, [therefore] the Court [should] use its discretion and approve the debt on the . . . promissory notes as a Trust liability and grant repayment from the remaining Trust corpus."

Respondent also sought repayment of a credit card account opened in the name of the trust, used to make purchases for the benefit of the trust, and to provide overdraft protection for the trust's checking account. The credit card transactions were memorialized in exhibits F and H to the petition. Exhibit F documented all of the transactions from the trust's checking account, including the overdraft deposits made from the trust's credit card. Exhibit H documented all of the credit card's transactions,

6

including the charges made (such as attorney retainer fees, timeshare dues, and property insurance), finance charges, and overdraft transfers made to the trust's checking account. A total of $18,441.87 had been charged, and an outstanding balance of $9,648.87 remained (after payments of $8,793 were credited).

Respondent also sought compensation for 181 hours spent working on the trust, at an hourly rate of $40 per hour. She sought additional compensation for "extraordinary services" for defending appellant's lawsuit, seeking an additional 110.80 hours of compensation at $40 per hour. Respondent provided a declaration detailing the services she provided for the trust for which she sought compensation, such as her extensive communications with counsel.

Respondent also sought reimbursement for $29,236.99 in out-of-pocket expenditures made on behalf of the trust. Those expenses were detailed in exhibit F, and included attorney retainers; postage and copy fees; funeral expenses; insurance and taxes for the MacNeil property; litigation expenses ($71.90 for parking); insurance, registration, and repair costs for decedent's car; and 2009 dues for decedent's timeshare.

Respondent also sought additional attorney fees of $25,875.09 which were billed from July 1, 2011, through April 18, 2013, which were supported by a fee declaration from counsel, and attorney invoices. Respondent's counsel sought to recover fees associated with preparing the petition for settlement of the account, and for preparing the accounting in support of the petition.

The petition also disclosed that one of the beneficiaries (Carlos Alberto Gonzalez) elected to receive an "in-kind distribution." Specifically, he elected to receive decedent's timeshare in Mexico, valued at $900, in lieu of a cash distribution of this same value, which would be reallocated to the other beneficiaries, and appellant.

Lastly, respondent sought to retain $2,000 in trust funds for final closing expenses related to the trust, such as attorney fees, wire transfer fees, and any incidental expenses.

After the liabilities claimed by respondent's petition were deducted from the trust's assets, appellant would receive a distribution of only $859.93 from the estate.

7

On May 10, 2013, appellant filed objections to respondent's petition. Specifically, she objected that any of the administration costs should be deducted from her share of the proceeds, reasoning she was not a beneficiary of the trust, and was not liable for expenses incurred by the trust. Appellant also argued that respondent was not entitled to any attorney fees or litigation costs as the costs were not incurred to protect the trust, but rather as a "fight over who would receive what portion of the Trust assets." Appellant also argued that respondent was not entitled to the $77,093.28 in attorney fees ordered on March 21, 2012, for this same reason.

Appellant also challenged the trustee fees claimed by respondent, arguing the claimed hours were excessive given the small size of the trust. Also, the extraordinary fees were not recoverable for the same reason that attorney fees were not recoverable.

Appellant additionally challenged respondent's out-of-pocket expenditures for car and real property maintenance, funeral expenses, litigation expenses, and timeshare dues. She urged that the property and vehicle expenses were not recoverable because respondent and her siblings (the beneficiaries) had use of the property and the car during the pendency of the litigation. She also objected to the credit card charges as improper, arguing only that "[t]here is no back-up showing why these charges were incurred. Accordingly, they are not proper."

In response to appellant's objections, respondent argued that the court had already ruled that appellant's share was subject to the administrative expenses of the estate, and that in any event, her intestate share was subject to the debts and liabilities of the estate. Respondent also argued that appellant did not timely challenge the $77,093.28 in attorney fees already ordered by the court, and that all the expenses were proper, and were incurred to preserve the trust's property.

A hearing on the petition for a final accounting was held on June 3, 2013. During the hearing, appellant argued that the probate court's March 21 order awarding attorney fees was in error, and that in any event, the fees and costs should not come out of appellant's portion of the disbursement. Respondent argued that appellant was

8

improperly seeking reconsideration of the March 21, 2012 order.  Appellant argued that the court had jurisdiction to modify or set aside its prior ruling.

The court took the matter under submission and issued its order on June 5, 2013. The June 5, 2013 order approved trustee fees of $3,750, reimbursement for $29,236.99 in out-of-pocket expenses, repayment of $9,648.87 for the credit card, additional attorney fees of $7,500, the requested reserve of $2,000, and authorized distribution of the remaining trust assets to the beneficiaries.  The court did not modify its March 21 determination that the distribution would be subject to the trust's expenses, or that respondent was entitled to recover attorney fees.

On July 31, 2013, appellant filed a notice of appeal for an "order under Probate Code section 1304."

## DISCUSSION

1.  **Motion to Dismiss Portions of the Appeal Relating to the March 21, 2012 Order of the Probate Court**

Respondent has moved to dismiss portions of this appeal as untimely.  Respondent contends appellant did not file a timely appeal to the March 21, 2012 order awarding respondent $77,093.28 in attorney fees and ordering that all distributions would be subject to court-approved trust expenditures.  Appellant contends her appeal is from the final judgment in the case, and therefore we may properly consider the March 21, 2012 order, which she describes as "interlocutory."

An appeal may be taken from "an order made appealable by the . . . Probate Code."  (Code Civ. Proc., § 904.1, subd. (a)(10).)  Probate Code sections 1300 and 1304 govern probate appeals.  Probate Code section 1300 makes certain orders of the probate court immediately appealable, regardless of their finality.  It provides that "[i]n all proceedings governed by this code, an appeal may be taken from the making of, or the refusal to make, any of the following orders," including an order "[f]ixing, authorizing, allowing, or directing payment of compensation or expenses of an attorney."  (Prob. Code, § 1300, subd. (e).)  Other appealable orders under Probate Code section 1300 include those "[s]ettling an account of a fiduciary," "[a]uthorizing, instructing, or

9

directing a fiduciary, or approving or confirming the acts of a fiduciary," and those "[f]ixing, directing, authorizing, or allowing payment of the compensation or expenses of a fiduciary." (*Id.*, subds. (b), (c), (f).) Probate Code section 1304 applies to "[a]ppealable orders relating to a trust," and authorizes appeals from any *final order* "settling the accounts" of the trust under Probate Code section 17200, subdivision (b)(5), among other final orders. (§ 1304, subd. (a).)

Appellant contends that because this litigation involves a trust, only Probate Code section 1304 is controlling, and she was under no obligation to appeal the court's March 21 order as it was not a "final order because it did not end the litigation on the merits." However, section 1300 applies to *all* probate appeals, regardless of whether they concern a trust, guardianship, conservatorship, or other matter falling under the Probate Code. (§ 1300.) It is well settled an order authorizing or allowing payment of attorney fees is immediately appealable under section 1300. This is true even though an appeal *also* lies from a final order under section 17200. (*Leader v. Cords* (2010) 182 Cal.App.4th 1588, 1594-1595 (*Leader*).)

On March 21, the court authorized payment of attorney fees of $77,093.28. An order "[f]ixing, authorizing, allowing, or directing payment of compensation or expenses of an attorney" is immediately appealable under Probate Code section 1300, subdivision (e). (*Leader*, *supra*, 182 Cal.App.4th at pp. 1594-1595.)

Moreover, the court's March 21 order that "All distributions are to be made after court approved expenses are deducted from the gross amount of trust corpus available for distribution" was an appealable order under Probate Code section 1300. Although the order contemplated some future actions, such as the sale of the trust property and a final accounting, it established the proportionate interests of each of the beneficiaries under the trust, and provided that they would take their interests subject to the costs of the administration of the trust. "[T]he appealability of an order of the probate court is determined not from its form, but from its legal effect." (*Estate of Martin* (1999) 72 Cal.App.4th 1438, 1442.) Here, the legal effect of the order was to "authoriz[e] payment of . . . expenses of a fiduciary," with the view that the parties would seek court review of

10

other expenditures at a later time, after the property was sold. (See *id*. at pp. 1442-1443 [order appealable under section 1300 even though it withheld determination of some of the factors relevant to the order]; see also § 1300, subd. (f).)

Because appellant did not timely appeal the March 21, 2012 order, she cannot now challenge those findings on an appeal from a later appealable order or final judgment. (See Code Civ. Proc., § 906; Cal. Rules of Court, rule 8.104; *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1450, fn. 5 ["[t]he orders listed as appealable in the Probate Code must be challenged timely or they become final and binding"]; *In re Estate of Richards* (1941) 17 Cal.2d 259, 267-268 [order approving exchange of real property, which had not been appealed, could not thereafter be challenged on appeal from decree settling the final account].)

Therefore, only appellant's challenges to the June 5, 2013 order are cognizable on appeal. But that does not end our analysis of respondent's motion to dismiss. Some of appellant's challenges to the June 5, 2013 order are simply attacks on the March 21 order. For example, appellant contends "[t]he trial court . . . erred when it awarded expenses to [respondent] in the total amount of $42,635, to be deducted from the gross trust proceeds prior to division of the proceeds between the parties." She also challenges respondent's entitlement to attorney fees, reasoning that "[b]ecause this litigation has been a fight over how the assets of the Trust are to be divided, [respondent] is not entitled to be reimbursed any fees or costs whatsoever."

This is nothing more than a challenge to the probate court's earlier orders that distributions would be subject to estate expenses, and that respondent was entitled to attorney fees, from which appellant did not timely appeal, and which the probate court declined to reconsider. An appealable interim order that is not timely appealed is "res judicata" in an appeal from the final judgment. (*In re Matthew C.* (1993) 6 Cal.4th 386, 393 ["If an order is appealable . . . and no timely appeal is taken therefrom, the issues determined by the order are res judicata. [Citation.]"].) Appellant may not make an end run around the rules of appealability, and collaterally attack those matters embraced by the March 21, 2012 order. (See, e.g., *Estate of Lindauer* (1942) 53 Cal.App.2d 160, 165-

11

166 [failure to appeal from order approving attorney fees and costs of estate, which were included in a prior accounting, precludes appellant from challenging these same items on appeal from final accounting]; *Estate of Richards*, *supra*, 17 Cal.2d at pp. 267-268; *Estate of Hanley* (1943) 23 Cal.2d 120, 122 [order settling the account must be appealed within 60 days from its entry]; accord, *Estate of Roberts* (1945) 27 Cal.2d 70, 76 [order granting a family allowance may not be attacked collaterally in a subsequent proceeding for distribution of the estate, where no appeal was taken from the order within the time prescribed by law]; *Estate of Gilkison*, *supra*, 65 Cal.App.4th at p. 1450, fn. 5 ["We have decided the case on the merits. However, we also observe that appellant is precluded from challenging the order in this appeal. As noted above, the court denied appellant's request for extraordinary fees in a minute order on February 9, 1994, reaffirming its earlier ruling. The clerk provided notice of entry of the order on February 10, 1994. The order was appealable at that time under Probate Code former section 7240, subdivision (*l*) (now § 1300, subd. (e)), and became final after appellant failed to file an appeal within the time allowed by law. (See Code Civ. Proc., § 904.1, subd. (a)(10); Cal. Rules of Court, rule 2(a).)"].)

That is not to say that the probate court lacked the power to reconsider its earlier rulings, make different rulings later in the case if warranted by the facts, or decide that the additional attorney fees requested by respondent were unreasonable. However, appellant does not contend on appeal that the probate court erroneously failed to reconsider or modify its March 21, 2012 order; nor does she challenge the amount of attorney fees ordered on June 5, 2013, as unreasonable. "Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived. [Citations.]" (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.) Therefore, we have no occasion to review the appealability of the trial court's decision to not revisit its earlier rulings.

Accordingly, we grant respondent's motion to dismiss the portions of this appeal concerning the March 21, 2012 attorney fee and distribution order, finding that they were

immediately appealable under Probate Code section 1300, and that appellant failed to timely appeal those orders.

**2.    June 5, 2013 Out-of-pocket Expenses and Credit Card Charges**

All that remains to be decided on appeal is appellant's challenge to $14,413.28 in expenses awarded by the probate court in its June 5, 2013 order. As is relevant here, the June 5, 2013 order awarded $29,236.99 in out-of-pocket expenses of respondent and credit card expenses of $9,648.87. Appellant contends that certain expenses totaling $14,413.28 "are not proper expenses and should be disallowed." Specifically, she challenges $71.90 in legal parking expenses, $4,280.51 in automobile expenses, $412 in timeshare expenses, and $9,648.87 in credit card expenses.

We review the probate court's award of fees and expenses for abuse of discretion. (*In re Estate of Spencer* (1936) 18 Cal.App.2d 220, 222-223.)

Appellant argues legal parking expenses are not recoverable for the same reason attorney fees are not recoverable. As discussed, *ante*, this claim is not cognizable on appeal.

Appellant also contends that the timeshare and automobile fees arise from respondent's personal use of trust assets, and are not recoverable. She also challenges the credit card charges awarded by the probate court. Specifically, appellant claims $4,000 charged on the card for attorney fees is not recoverable. As discussed *ante*, we will not consider this argument on appeal. She also challenges $7,128.19 in "overdraft transfers" for the trust's checking account that were charged on the card. Appellant argues that it is unclear what these transfers were for, and therefore, they are not recoverable.

Appellant has not cited any authority to support her claim that any of the challenged fees is suspect or unauthorized. Moreover, she has not pointed to any lack of evidence or any other basis for finding that the probate court abused its discretion. All of the challenged fees were supported by substantial evidence, in the form of declarations and detailed ledgers. And, it is clear that the probate court made a thorough and reasoned review of the claimed expenses, as it did not award respondent all of the expenses she sought in her petition. On this record, we can find no error.

13

**DISPOSITION**

The motion to dismiss is granted.  The judgment is otherwise affirmed.

Respondent is awarded her costs on appeal.


                                        GRIMES, J.

We concur:

        BIGELOW, P. J.



        RUBIN, J.

14