SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### Sandra Woytas v. Greenwood Tree Experts, Inc. (A-31-18) (081720)

**Argued March 25, 2019 -- Decided May 6, 2019**

**SOLOMON, J., writing for the Court.**

In this appeal, the Court first considers whether Timothy G. Woytas breached the Marital Settlement Agreement (MSA) he entered into with Christina Woytas prior to their divorce by committing suicide within two years of purchasing life insurance policies he was required to "maintain" under the MSA, when those policies included a "suicide exclusion" barring recovery of benefits if the insured were to commit suicide within two years of purchase. Second, the Court is asked to determine to whom the limited funds in Timothy's estate should be distributed and in what amounts.

The MSA required Timothy to provide a monthly sum to Christina for support of their three children and to pay her monthly alimony for twelve years. The MSA also required that Timothy maintain medical insurance for the children; pay sixty-five percent of the children's unreimbursed and non-reimbursable medical, dental, and other health care expenses; pay sixty-five percent of any mutually agreed upon extracurricular activities; pay fifty percent of the children's cell-phone expenses; and, if practicable, contribute to the children's undergraduate college, junior college, or vocational or trade school education, including application fees, preadmission standardized test costs, tuition, room and board, activity fees, lab fees, books, supplies, and transportation.

In order to secure those obligations, the MSA obligated Timothy to maintain a $400,000 life insurance policy for the duration of his alimony obligation, naming Christina as the beneficiary. Timothy was likewise required to maintain a $750,000 life insurance policy for the benefit of the children, as co-equal beneficiaries. Pertinent to this appeal, Timothy and Christina handwrote a clause into the MSA, providing that "[i]n the event either party fails to maintain the life insurance [policy requirements], such party's estate shall be liable for any outstanding obligations owed under this Agreement."

Timothy obtained the necessary policies, which contained a "suicide exclusion" providing that if the primary insured -- Timothy -- should commit suicide within two years of the effective date of the policy, the death benefit would equal only the premiums paid plus interest. A little over four months after his divorce, Timothy married Sandra Woytas and obtained a $500,000 life insurance policy naming her as the beneficiary.

1

Less than two years after his divorce from Christina, Timothy committed suicide. Sandra was appointed administratrix of his estate. The suicide clauses in the policies purchased pursuant to the MSA and the policy purchased for Sandra's benefit, which contained a similar exclusion, led to a denial of the death benefits on each policy.

Christina filed claims against Timothy's estate on her own behalf and on behalf of the three children. Sandra likewise filed a claim against Timothy's estate for the value of the life insurance policy naming her as beneficiary. The claims against the estate totaled over $1,400,000. However, at the time of his death, Timothy's assets, less estate expenses, totaled only $446,966.47.

Finding no controlling New Jersey case law, the Chancery judge, citing Tintocalis v. Tintocalis, 25 Cal. Rptr. 2d 655 (Ct. App. 1993), concluded that Timothy breached the MSA by failing to maintain life insurance for the benefit of Christina and the children. The court explained that "the calculation of future child [support] . . . payments relie[d] on too many uncertainties." Finding that the claim for outstanding child support "must be paid before any other claims," and that this obligation exceeds the value of the estate's net assets, the Chancery Division awarded the amount claimed as outstanding child support -- $750,000. The court thus ordered Sandra, as adminstratrix of Timothy's estate, to pay the balance of the estate to Christina for the benefit of the children.

In an unpublished opinion, the Appellate Division affirmed. The Appellate Division agreed with the trial court's determination that Timothy breached the MSA by committing suicide. The panel held that the children were entitled to the $750,000 face value of the life insurance policy from Timothy's estate. Thus, the panel dismissed Sandra's contention that the children should be entitled only to outstanding child support payments over time. Finally, the panel held that the MSA's requirement that Timothy maintain life insurance benefiting the children constituted a child support order, and it rejected Sandra's argument that her claims had priority.

The Court granted Sandra's petition for certification. 236 N.J. 239 (2018).

**HELD:** The MSA required Timothy to "maintain" life insurance to support the children in the event of Timothy's death. Because Timothy's suicide barred recovery of the life insurance proceeds, he failed to "maintain" life insurance and therefore breached the Agreement. A precise calculation of Timothy's outstanding child support obligations would be speculative, and the Chancery Division did not abuse its discretion by finding that Timothy's outstanding obligations exceed the remaining assets of Timothy's estate. Thus, there would be no remaining estate assets to pay Sandra's claims, and a remand for a precise damages calculation is unnecessary.

1.  The question of whether Timothy's suicide resulted in a breach of the MSA is a matter of first impression in New Jersey.  In Tintocalis, the husband was required to "immediately secure" and "maintain" a life insurance policy benefiting his wife until his alimony obligation ended.  25 Cal. Rptr. 2d at 657.  The husband purchased a life insurance policy with a two-year suicide exclusion and committed suicide within the exclusion period.  Ibid.  The court concluded that the husband's actions could not "reasonably be equated with 'maintaining' the policy," because the wife could not recover on the policy after the husband's death.  Id. at 658.  (pp. 13-15)

2.  Tintocalis is analogous to the present case and persuasive.  As in Tintocalis, the plain language of the MSA here required Timothy to "maintain" a life insurance policy for the benefit of the children.  Black's Law Dictionary defines "maintain" to mean "[t]o continue (something)."  The life insurance policy purchased by Timothy for the benefit of the children did not "continue" after his suicide.  More importantly, his act of suicide deprived the children of the intended benefits of the policy.  Therefore, Timothy's suicide constituted a breach of the MSA -- it thwarted the MSA's intent to provide for the children's support in the event of his death.  (p. 15)

3.  Timothy's child support obligations were substantial, and consisted of monthly payments as well as payment of a significant percentage of the children's expenses.  The MSA's clear and unambiguous handwritten clause provides for the measure of loss occasioned by Timothy's breach -- "any outstanding obligations owed under this Agreement."  At the time of Timothy's death, the three children were ages sixteen, fourteen, and eleven.  The Chancery Division concluded that the circumstances warranted payment of the remaining assets of the estate to the children because the amount owed to them exceeded the estate's net assets.  (pp. 15-17)

4.  In light of Timothy's substantial child support obligations and the number of years for which it has been and will be owed, common sense supports the remedy reached by the Chancery judge, which more accurately reflects the scope of Timothy's obligations than the appellate panel's reliance on the policy limit.  With that modification, the Court affirms the judgment of the panel because Timothy's outstanding child support obligations exceed the value of the remaining assets of Timothy's estate.  Here, because there would be no remaining estate assets to pay Sandra's claims, remand for a precise damages calculation is unnecessary.  (pp. 17-18)

**The judgment of the Appellate Division is AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.**

SUPREME COURT OF NEW JERSEY
A-31 September Term 2018
081720

Sandra Woytas, Administratrix
of the Estate of Timothy G.
Woytas, deceased; and Sandra
Woytas, individually,

Plaintiff-Appellant,

v.

Greenwood Tree Experts, Inc.,
Greenwood Lawn Services, Inc.,
Greenwood Continuity Trust,
John R. Woytas, III, Raymond J.
Woytas, David W. Dubee, Robert
W. Dubee, Whippany Fire
Department (a/k/a Township of
Hanover Fire District #2) and
Lincoln National Life Insurance
Company,

Defendants,

and

Christina Woytas, individually
and as guardian for T.M. Woytas,
C.T. Woytas and J.T. Woytas,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

1

| Argued | Decided |
|--------|---------|
| March 25, 2019 | May 6, 2019 |

Matheu D. Nunn argued the cause for appellant (Einhorn, Harris, Ascher, Barbarito & Frost, attorneys; Matheu D. Nunn, of counsel and on the briefs, and Bonnie C. Frost and Gary R. Botwinick, on the briefs).

Lauren F. Iannaccone argued the cause for respondent (Connell Foley, attorneys; Lauren F. Iannaccone, on the brief, and Andrew C. Sayles, of counsel and on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

Christina Woytas and Timothy G. Woytas were married for seventeen years and had three children. The couple divorced after entering into a Marital Settlement Agreement that required Timothy to pay both alimony and child support. To secure Timothy's child support and alimony obligations, the Agreement required that he "maintain" life insurance policies naming Christina and their three children as beneficiaries.

The life insurance policies Timothy purchased included a "suicide exclusion" barring recovery of benefits if the insured were to commit suicide within two years of purchase. Timothy committed suicide within two years of acquiring the policies. As a result, the insurance companies did not pay the face value of the life insurance policies, instead offering a return of premiums plus interest.

2

In this appeal, we first consider whether Timothy breached the Marital Settlement Agreement by committing suicide within two years of purchasing the life insurance policies. Second, we are asked to determine to whom the limited funds in Timothy's estate should be distributed and in what amounts.

We agree with the Chancery Division and the Appellate Division that the Marital Settlement Agreement required Timothy to "maintain" life insurance to support the children in the event of Timothy's death. Because Timothy's suicide barred recovery of the life insurance proceeds, we find that he failed to "maintain" life insurance and therefore breached the Agreement.

As to the distribution of Timothy's estate, we concur with the Chancery Division that a precise calculation of Timothy's outstanding child support obligations would be speculative. We also determine that, in light of Timothy's substantial child support obligations, the Chancery Division did not abuse its discretion by finding that Timothy's outstanding obligations exceed the remaining assets of Timothy's estate. Thus, there would be no remaining estate assets to pay Sandra's claims, and a remand for a precise damages calculation is unnecessary.

3

I.

A.

The record of the trial court reveals that Timothy and Christina were married for more than seventeen years and had three children from the marriage. Timothy and Christina entered into a Marital Settlement Agreement (MSA) and divorced. The MSA required Timothy to provide $1551 per month to Christina for support of their three children, and to pay $5000 per month of alimony to Christina for twelve years.

The MSA also required that Timothy maintain medical insurance for the children; pay sixty-five percent of the children's unreimbursed and non-reimbursable medical, dental, prescription drug, psychiatric, psychotherapy, psychological, eye care, and orthodontic expenses; pay sixty-five percent of any mutually agreed upon extracurricular activities; pay fifty percent of the children's cell-phone expenses; and, if practicable, contribute to the children's undergraduate college, junior college, or vocational or trade school education, including application fees, preadmission standardized test costs, tuition, room and board, activity fees, lab fees, books, supplies, and transportation.

In order to secure those obligations, the MSA required Timothy to maintain life insurance policies naming Christina and the three children as beneficiaries. Specifically, the MSA obligated Timothy to maintain a

$400,000 life insurance policy for the duration of his alimony obligation, naming Christina as the beneficiary. If Timothy remained current with his alimony obligation, the MSA permitted him to reduce the policy by $30,000 each year, provided the value of the policy did not fall below $250,000. Timothy was likewise required to maintain a $750,000 life insurance policy for the benefit of the children, as co-equal beneficiaries, to be reduced by $250,000 upon a child's emancipation.

Pertinent to this appeal, Timothy and Christina handwrote a clause into the MSA, providing that "[i]n the event either party fails to maintain the life insurance [policy requirements], such party's estate shall be liable for any outstanding obligations owed under this Agreement."

Timothy procured a $100,000 life insurance policy naming Christina as the beneficiary, supplementing a separate $300,000 policy Timothy purchased during their marriage, naming Christina as the beneficiary. Additionally, Timothy obtained a $750,000 life insurance policy naming the three children as beneficiaries. Both policies contained a "suicide exclusion" which provided that if the primary insured -- Timothy -- should commit suicide within two years of the effective date of the policy, the death benefit would equal only the premiums paid plus interest.

A little over four months after his divorce from Christina, Timothy married Sandra. Because Sandra's former husband's alimony payments terminated upon her second marriage, Timothy obtained a $500,000 life insurance policy naming Sandra as the beneficiary.

Less than two years after his divorce from Christina, Timothy committed suicide, intestate, and Sandra was appointed administratrix of his estate. At the time of Timothy's death, the children were ages sixteen, fourteen, and eleven. Christina recovered $300,000 from the life insurance policy procured by Timothy before the divorce. However, because of the "suicide exclusion," her claims under the policies purchased pursuant to the MSA were denied. Instead, Christina received a return of the premiums paid on each policy, plus interest, totaling $1600.85. Owing to a similar suicide exclusion, Sandra was also unable to recover from the $500,000 life insurance policy purchased for her benefit.

## B.

Christina filed claims against Timothy's estate on her own behalf and on behalf of the three children. She asserted that, because the insurance company denied her claims, she was entitled to $100,000[1] and the children were entitled

---

[1] Sandra does not contest in this appeal Christina's $100,000 claim against the estate or its priority after the children's claim.

6

to $750,000 from the estate pursuant to the MSA. Sandra likewise filed a claim against Timothy's estate for $500,000 -- the value of the life insurance policy naming her as beneficiary.[2]

C.

Sandra, as administratrix of Timothy's estate and in her personal capacity, filed a verified complaint in the Chancery Division. By her complaint, Sandra made claims against Christina.[3]

Christina and her eldest child, Taylor Woytas, on behalf of themselves and the two minor children (collectively, moving defendants), filed a counterclaim against Timothy's estate. Moving defendants claimed that Timothy breached the MSA by committing suicide and that they are entitled to payment from the estate for the unrecoverable proceeds of Timothy's life insurance policies. The claims against the estate totaled over $1,400,000.

---

[2] Sandra also claimed that Timothy agreed to convey to her, upon his death, his interest in Greenwood Tree Experts, Inc., and Greenwood Lawn Services, Inc. Those claims are not germane to this appeal.

[3] Although not relevant to this appeal, Sandra also made claims on behalf of the estate against several individuals and entities associated with Greenwood Tree Experts, Inc., and Greenwood Lawn Services, Inc., the businesses Timothy had partly owned.

However, at the time of his death, Timothy's assets, less estate expenses, totaled only $446,966.47.[4]

Moving defendants filed for summary judgment, asking the Chancery Division to declare that Timothy breached the MSA by committing suicide, and that their claims for unpaid child support and alimony have priority over all other claims asserted against the estate. Sandra, individually and on behalf of the estate, opposed the motion.[5]

Finding no controlling New Jersey case law, the Chancery judge, citing Tintocalis v. Tintocalis, 25 Cal. Rptr. 2d 655 (Ct. App. 1993), concluded that Timothy breached the MSA by failing to maintain life insurance for the benefit of Christina and the children. Relying upon the handwritten passage in the MSA -- that if either party fails to maintain life insurance, the party's estate would be liable for any outstanding obligations owed under the agreement -- the judge found that moving defendants were entitled to damages from the estate. The court also declared that the children's claims had first priority over all other claims to the remainder of the estate.

---

[4] This is the amount reflected in the estate's Report of Claims to the Chancery Division: Probate Part.

[5] Timothy's father, John Woytas, III, also opposed the motion. However, his claims are not pertinent to this appeal.

8

Finally, regarding damages, the court explained that "the calculation of future child [support] . . . payments relie[d] on too many uncertainties." The court determined that it could not therefore calculate the precise "damages owed to [m]oving [d]efendants that must be distributed from the estate." Finding that moving defendants' claim for outstanding child support "must be paid before any other claims," and that this obligation exceeds the value of the estate's net assets, the Chancery Division awarded moving defendants the amount claimed as outstanding child support -- $750,000. The court thus ordered Sandra, as adminstratrix of Timothy's estate, to pay the balance of the estate to Christina for the benefit of the children.

D.

Sandra, in her personal capacity and as administratrix of the estate, appealed the Chancery Division's decision. In an unpublished opinion, the Appellate Division affirmed summary judgment in favor of Christina and the children.

First, the Appellate Division agreed with the trial court's determination that Timothy breached the MSA by committing suicide. Like the Chancery Division, the panel found Tintocalis persuasive and determined that in order to "maintain" life insurance, one must "not . . . do anything [that] would interfere with [the] benefits being paid thereunder." (quoting 25 Cal. Rptr. 2d at 657

9

(second and third alterations in original)).  The panel reasoned that by committing suicide within two years of the policies' procurement such that the "suicide exclusion" prevented recovery of the policies' face value, Timothy failed to maintain the required life insurance policies and breached the MSA.

Noting that the MSA required Timothy to maintain life insurance with a face value of $750,000 as security for the comprehensive support of Timothy's children, the panel held that the children were entitled to the $750,000 face value of the life insurance policy from Timothy's estate.  Thus, the panel dismissed Sandra's contention that the children should be entitled only to outstanding child support payments over time.

Finally, the panel held that the MSA's requirement that Timothy maintain life insurance benefiting the children constituted a child support order, and it rejected Sandra's argument that her claims had priority.

We granted Sandra's petition for certification.  236 N.J. 239 (2018).

## II.

Sandra does not challenge the priority of moving defendants' claims.[6] However, she argues before this Court that Timothy's act of suicide did not

_____

[6]  Neither Christina nor Sandra appeal the Chancery Division's declaratory judgment to treat the children's claim as a claim for child support and that it has priority under N.J.S.A. 3B:22-2(d).  Therefore, the issue of priority is not before this Court.

10

constitute a breach of the MSA. Sandra additionally asserts that if this Court does find Timothy breached the MSA, the children are not entitled to the face value of the life insurance policy, as the Appellate Division held, but instead are entitled only to payment of monthly child support because payment "over time" will more accurately "discern the total sum of child support and college costs."

Conversely, Christina and the children argue Timothy's act of suicide did constitute a breach of the MSA. Christina asks this Court to affirm the decision of the Appellate Division and hold that the children are entitled to $750,000, the face value of Timothy's life insurance policy purchased for their benefit.

III.

A.

In this appeal, we examine the trial court's grant of summary judgment in favor of moving defendants, which rested on the conclusion that Timothy breached the MSA by committing suicide. We review a grant of summary judgment de novo, applying the same standard as the trial court. Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).

By that standard, summary judgment should be granted "when 'the pleadings, depositions, answers to interrogatories and admissions on file,

11

together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting R. 4:46-2). The parties agree that this appeal turns only on a question of law -- whether Timothy's act of suicide constituted a breach of the MSA and, if so, the proper measure of the children's support claim against the estate.

B.

1.

In deciding whether, as a matter of law, Timothy breached the MSA, we apply "basic contract principles" because "[a]n agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citations omitted). According to those principles, we must "discern and implement the common intention of the parties." Ibid. Therefore, our role when interpreting marital settlement agreements is to "consider what is 'written in the context of the circumstances' at the time of drafting and to apply 'a rational meaning in keeping with the expressed general purpose.'" Sachau v. Sachau, 206 N.J. 1, 5-6 (2011) (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)). In doing so, "the words of an agreement are given their 'ordinary'

12

meaning." Flanigan v. Munson, 175 N.J. 597, 606 (2003) (quoting Shadow

Lake Vill. Condo. Ass'n v. Zampella, 238 N.J. Super. 132, 139 (App. Div.

1990)). Therefore, where the parties' intent "is plain and the language is clear

and unambiguous, a court must enforce the agreement as written, unless doing

so would lead to an absurd result." Quinn, 225 N.J. at 45.

A party violates the terms of a contract by failing to fulfill a requirement

enumerated in the agreement. To prevail on a claim that the terms of a

contract were violated, a plaintiff must prove four elements:

> first, that the parties entered into a contract containing
> certain terms; second, that [the] plaintiff did what the
> contract required [the plaintiff] to do; third, that [the]
> defendant did not do what the contract required [the
> defendant] to do, defined as a breach of the contract;
> and fourth, that [the] defendant's breach, or failure to
> do what the contract required, caused a loss to the
> plaintiff.
>
> [Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)
> (citations and quotation marks omitted; alterations in
> original omitted or not noted).]

2.

While the question of whether Timothy's suicide resulted in a breach of

the MSA is a matter of first impression in New Jersey, other jurisdictions have

considered the question. For example, in Terry v. Terry, 788 So. 2d 1129 (Fla.

Dist. Ct. App. 2001), a Florida appellate court examined the following facts.

In 1993, a divorcing husband and wife entered into an agreement requiring the

13

husband to purchase and maintain a life insurance policy for the benefit of the wife.  Id. at 1129-30.  The husband did not buy the policy until 1997, after the wife moved for contempt.  Id. at 1130.  The acquired policy included a two-year suicide exclusion.  Ibid.  The husband remarried, and later committed suicide within the two-year exclusion period, which prevented the first wife from recovering under the policy.  Ibid.  The Florida court found in favor of the husband's estate, holding that the first wife could not recover because she waited four years before moving to enforce the husband's insurance obligation.  Id. at 1131.

Also, in Tintocalis the husband was required to "immediately secure" and "maintain" a life insurance policy benefiting his wife until his alimony obligation ended.  25 Cal. Rptr. 2d at 657.  The husband purchased a life insurance policy with a two-year suicide exclusion.  Ibid.  The husband committed suicide within the exclusion period.  Ibid.  The California Court of Appeals for the Second District found that the husband was required to maintain the life insurance policy so that, in the case of his death, the wife could receive "some measure of financial support."  Id. at 659.  The court concluded that the husband's actions could not "reasonably be equated with 'maintaining' the policy," because the wife could not recover on the policy

14

after the husband's death.  Id. at 658.  The court therefore held that the estate was financially responsible for the wife's loss.  Ibid.

We first note that here, unlike Terry, there is no equitable consideration, such as delay, militating against moving defendants' recovery.  Tintocalis, however, is analogous and persuasive.  As in Tintocalis, the plain language of the MSA here required Timothy to "maintain" a life insurance policy for the benefit of the children.  Although the MSA does not define "maintain," Black's Law Dictionary defines "maintain" to mean "[t]o continue (something)."  Black's Law Dictionary 1039 (9th ed. 2009).  The life insurance policy purchased by Timothy for the benefit of the children did not "continue" after his suicide.  More importantly, his act of suicide deprived the children of the intended benefits of the policy.  Therefore, Timothy's suicide cannot "reasonably be equated with 'maintain[ing]' the policy," Tintocalis, 25 Cal. Rptr. 2d at 658, and we determine that Timothy's suicide constituted a breach of the MSA -- it thwarted the MSA's intent to provide for the children's support in the event of his death.

## V.

Having concluded that Timothy breached the MSA by failing to do what the agreement required, see Globe Motor Co., 225 N.J. at 482, we turn to the question of remedy.  A breaching party is "liable for all of the natural and

15

probable consequences of the breach of [the] contract." <u>Pickett v. Lloyd's</u>, 131 N.J. 457, 474 (1993). We therefore consider the distribution of damages from Timothy's estate.

In doing so, we are mindful that the Superior Court, Chancery Division "has considerable discretion, applying equitable principles, to condition the relief it gives a litigant." <u>Kingsdorf v. Kingsdorf</u>, 351 N.J. Super. 144, 157 (App. Div. 2002). "Applying principles of fairness and justice, a judge sitting in a court of equity has a broad range of discretion to fashion the appropriate remedy in order to vindicate a wrong consistent with the principles of fairness, justice and the law." <u>Graziano v. Grant</u>, 326 N.J. Super. 328, 342 (App. Div. 1999). Since a marital settlement agreement "fall[s] within the category of contracts enforceable in equity," <u>Peterson v. Peterson</u>, 85 N.J. 638, 642 (1981), those same principles apply in this case.

Initially, we repeat that the MSA's requirement for Timothy to maintain $750,000 of life insurance was intended to secure Timothy's child support obligations. Those obligations were substantial, and consisted of monthly payments of $1551, as well as payment of a significant percentage of medical insurance for the children, their unreimbursed health costs, extracurricular activities, cell-phone expenses, college or trade school tuition, application

16

fees, preadmission standardized tests, room and board, activity fees, lab fees, books, supplies, and transportation.

The MSA's clear and unambiguous handwritten clause provides for the measure of moving defendants' loss occasioned by Timothy's breach -- "any outstanding obligations owed under this Agreement." At the time of Timothy's death, the three children were ages sixteen, fourteen, and eleven. Today, none of the children are emancipated and two are attending college. Timothy's child support obligations under the MSA have been owed to the children since his death in 2014.

If the outstanding obligations are a sum certain, then a court should hold the estate liable for that amount. Konczyk v. Koncyzk, 367 N.J. Super. 512, 513-14 (App. Div. 2004). Here, we defer to the facts found by the Chancery Division that "the calculation of future child [support] and alimony payments relies on too many uncertainties" -- such as medical expenses for serious illness or injury and college tuition and living expenses -- and an actual calculation of damages would be too speculative. The court concluded that the circumstances warranted payment of the remaining assets of the estate to the children because the amount owed to them exceeded the estate's net assets.

In light of Timothy's substantial child support obligations and the number of years for which it has been and will be owed, common sense

17

demands that we respect the Chancery judge's exercise here of his "broad range of discretion to fashion the appropriate remedy." Graziano, 326 N.J. Super. at 342. That conclusion more accurately reflects the scope of Timothy's obligations than the appellate panel's reliance on the policy limit. With that modification, we affirm the judgment of the panel because Timothy's outstanding child support obligations exceed the value of the remaining assets of Timothy's estate. In a closer case, a remand for a precise calculation of damages would be appropriate. Here, because there would be no remaining estate assets to pay Sandra's claims, remand for a precise damages calculation is unnecessary.

## VI.

For the reasons set forth above, we affirm as modified the judgment of the Appellate Division.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.