**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3111-20

IN THE MATTER OF THE
ESTATE OF WARREN A.
THECKSTON, deceased.

_____

Submitted September 12, 2022 – Decided September 26, 2022

Before Judges Currier and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Camden County, Docket No. CP-0179-2020.

James M. Theckston, appellant pro se.

Thatcher Passarella, PC, attorneys for respondent Jacqueline Sherriton (Steven T. Passarella, of counsel and on the brief).

PER CURIAM

This appeal arises out of a family dispute concerning the transfer of property. James M. Theckston (James),[1] son of decedent Warren A. Theckston, appeals the May 21, 2021 Chancery Division order granting summary judgment to Jacqueline Sherriton (Jacqueline), decedent's daughter, and dismissing James's complaint. We affirm.

We summarize the facts from the motion record in a light most favorable to James as the non-moving party. R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On November 26, 2019, Warren died intestate. At the time of his death, Warren had four children: James, Jacqueline, Dorothy Passini, and Theresa Theckston.[2] James was estranged from his father for approximately fifteen years.

Prior to his death, Warren owned three properties in Gloucester City, New Jersey. In November 2019, deeds to the Gloucester City properties were completed at the direction of and in Warren's presence while he was in the hospital. The three deeds were then signed, witnessed, notarized, and

---

[1] We refer to the parties by their first names to avoid any confusion caused by their common last name. No disrespect is intended.

[2] Prior to her father's death, Theresa was diagnosed with cancer. She passed away on March 11, 2020, and is survived by her daughter, Katherine Bradley.

transferred to Jacqueline based on Warren's intention to have funds available to care for Theresa and Katherine. The notary who executed the deeds in the hospital testified during his deposition that Warren was "alert and aware" when the three deeds were signed. The notary also testified that he "perceived no coercion or persuasion by other parties."

The three deeds identified the notary as the preparer of the deeds. Both Jacqueline and the notary acknowledged that his name was mistakenly printed as the preparer of the deeds. Due to this mistake, and uncertain if the deeds would be accepted for recording, Jacqueline spoke to her siblings about signing renunciations and disclaimers. James, Dorothy, and Theresa signed disclaimers on December 7, 2019. Thereafter, on December 12, 2019, the deeds were accepted by the Camden County Clerk's office and subsequently recorded.

On July 10, 2020, James filed a complaint and order to show cause alleging: (1) his disclaimer was forged and obtained by fraud in the inducement; (2) the deeds were procured by undue influence; and (3) Warren lacked the mental capacity to sign the deeds.

In April 2021, Jacqueline filed a motion for summary judgment. Following oral argument on May 21, 2021, the motion judge granted the motion and dismissed James's complaint with prejudice. In a comprehensive oral

opinion, the motion judge recounted the procedural history and facts pertinent to the motion. The motion judge found that there were no genuine issues of material fact and concluded there was no evidence to suggest the deeds were forged or procured by undue influence. While acknowledging the close relationship between Warren and Jacqueline, the motion judge determined "there was nothing suspicious in the circumstances surrounding the execution of those documents, especially given the testimony from the notary who was not connected to these people and not connected to [Jacqueline]." Moreover, the judge found that the record did not support a finding that Warren lacked the mental capacity to sign the deeds. Lastly, the motion judge found the disclaimer was valid and enforceable. This appeal followed.

The following issue are presented:

> POINT I
>
> The disclaimer is not enforceable because Jacqueline fraudulently induced petitioner into signing it.
>
> POINT II
>
> Summary Judgment Should Not Be Granted as Ample Evidence on the Record Exists to Set Aside the Deeds.

A-3111-20

POINT III

Petitioner's relationship with his father has nothing to do with whether the deeds [were] recorded by Respondent.

POINT IV

MISSING WILL

POINT V

DISCLAIMER

POINT VI

DEEDS

POINT VII

FATHERS WISHES/INTENTIONS

POINT VIII

DISAGREEMENT – ALLOCATION OF ESTATE FUNDS

POINT IX

IMPORTANT STATUS UPDATE

I.     Summary Judgment Standard

We review a trial court's grant of summary judgment de novo, "applying the same standard as the trial court." State v. Anderson, 248 N.J. 53, 67 (2021)

(quoting Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)).

As noted by our Supreme Court

> By that standard, summary judgment should be granted "when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"
>
> [Woytas, 237 N.J. at 511 (quoting Brill, 142 N.J. at 528-29).]

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

II.     Validity and Enforceability of the Disclaimer

James's renunciation of the three properties is governed by N.J.S.A. 3B:9-2 and -3.  N.J.S.A. 3B:9-2 provides

> Any person who is an heir, or a devisee or beneficiary under a will or testamentary trust, or appointee under a power of appointment exercised by a will or testamentary trust, including a person succeeding to a disclaimed interest, may disclaim in whole or in part

6

any property or interest therein, including a future interest, by delivering and filing a disclaimer under this chapter.

Pursuant to the statute, such a disclaimer must be in writing, signed, and acknowledged by the person repudiating their interest.

A valid disclaimer must "(1) describe the property, interest, power or discretion disclaimed; (2) if the property interest disclaimed is real property, identify the municipality and county in which the real property is situated; and (3) declare the disclaimer and the extent thereof." N.J.S.A. 3B:9-3(a).

We find James's argument that the disclaimer is invalid and unenforceable unavailing. It is undisputed that James signed a written document acknowledging his renunciation of the three properties. The two-page disclaimer contained clear and concise language identifying James as a beneficiary of Warren's estate and listing the Gloucester City properties in the estate. The document likewise clearly provided James's disclaimer of his interest in Warren's estate. James's self-serving statements related to not obtaining legal advice or reading the disclaimer and consuming alcohol prior to signing the disclaimer are insufficient to overcome a motion for summary judgment. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015).

Equally unavailing is James's groundless argument that the deed was forged. As correctly noted by the motion judge, James failed to present any expert evidence to support these claims so as to create a genuine issue of material fact. See Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 97-98 (App. Div. 2014) (holding "[b]ald assertions are not capable of either supporting or defeating summary judgment").

III.    Decedent's Capacity to Transfer Deeds

We next address James's argument claiming the motion judge erred when he found Warren had the capacity to execute the three deed transfers. There is a rebuttable presumption that Warren was of sound mind and competent when he executed the deeds. See Haynes v. First Nat'l Bank of N.J., 87 N.J. 163, 175-76 (1981). "[T]he burden of establishing a lack of [] capacity is upon the one who challenges its existence . . . [and] must be [proven] by clear and convincing evidence." In re Estate of Hoover, 21 N.J. Super. 323, 325 (App. Div. 1952).

As a general principle, "a very low degree of mental capacity" is required to execute a deed. In re Will of Liebl, 260 N.J. Super. 519, 524 (App. Div. 1992). To determine whether a decedent had capacity, we must consider if [decedent] was able to "comprehend the property he [was] about to dispose of; the natural objects of [his] bounty; the meaning of the business in which he [was]

engaged; the relation of each of these factors to the others, and the distribution that is made by the will." In re Livingston's Will, 5 N.J. 65, 73 (1950). Capacity [was] tested at the time of execution of the deed. Id. at 76.

We find no merit in James's argument that Warren lacked the capacity to sign and transfer the deeds because he was hospitalized. The motion record is devoid of any facts establishing Warren lacked mental capacity. It is undisputed that Warren was aware of and comprehended the effect of signing the deeds. James's argument is unsupported by any medical documents or testimony that Warrant's health issues rendered him medically and mentally incapable of conveying his intentions and later signing the deeds. See Klenert, 437 Super. at 497-98.

IV.   Lack of Undue Influence

James bears the burden of proving undue influence. Generally,

> Undue influence is a mental, moral, or physical exertion of a kind and quality that destroys the free will of the testator by preventing that person from following the dictates of his or her own mind as it relates to the disposition of assets, generally by means of a will or inter vivos transfer . . . .
>
> [In re Estate of Folcher, 224 N.J. 496, 512 (2016) (alteration in original) (quoting In re Estate of Stockdale, 196 N.J. 275, 302-03 (2008)).]

9

"It denotes conduct that causes the testator to accept 'the domination or influence of another' rather than follow his . . . wishes." Stockdale, 196 N.J. at 303.

The motion record does not support James's claim of undue influence. As the motion judge stated, there was nothing "suspicious in the circumstances surrounding the execution of the [deeds and power of attorney], especially given the testimony from the notary who was not connected to these people and not connected to [decedent]." James's contention that daily phone contact between the decedent and Jacqueline in addition to frequent visits when they both lived in Florida constituted a "confidential relationship" is insufficient to establish undue influence. While family relationships often constitute confidential relationships, however, "the mere existence of family ties does not create . . . a confidential relationship[,]" and a confidential relationship "does not exist 'where the parties deal on terms of equality,' even though they are, the same time, family members[.]" Estate of Ostlund v. Ostlund, 391 N.J. Super. 390, 401-02 (App. Div. 2007) (quoting Stroming v. Stroming, 12 N.J. Super. 217, 224 (App. Div. 1951)).

Based on our review of the motion record and applicable law, we discern no legal basis to the judge's well-reasoned legal conclusion in granting summary judgment. James has presented no arguments on appeal that would persuade us

A-3111-20

to disturb the motion judge's sound ruling, which was supported by sufficient credible evidence in the record.  See Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474 (1974).

To the extent we have not addressed any of James's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3111-20