**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1604-24

CRIMKAV CORPORATION
t/a THE BLAU & BERG
COMPANY,

      Plaintiff-Respondent,

v.

GETTY INDUSTRIES LLC and
ALMA REALTY CORP.,

      Defendants-Appellants.

_____

Argued April 13, 2026 – Decided April 23, 2026

Before Judges Sabatino and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-9380-19.

Dennis J. Drasco argued the cause for appellants (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, PC, attorneys; Dennis J. Drasco and Scott E. Reiser, of counsel and on the briefs).

Alan S. Pralgever argued the cause for respondent (Greenbaum, Rowe, Smith & Davis LLP, attorneys; Alan S. Pralgever and Luke J. Kealy, on the brief).

PER CURIAM

This appeal concerns a dispute over brokerage fees for the lease of space in a commercial warehouse building in Paterson. The dispute centers upon an exclusive listing agreement executed between the broker, plaintiff Crimkav Corporation t/a The Blau & Berg Company ("Blau"), and defendants Getty Industries LLC ("the property owner") and Alma Realty Corp. ("the property manager").

After an eight-day bench trial, the trial judge awarded Blau $634,347 in commissions for leasing two units of the premises, specifically an 88,000 square foot space (known as "Unit D") and an 80,000 square foot space (known as "Unit A"). In addition, the trial court awarded Blau $650,013 in contractual prejudgment interest and $460,516 in attorneys' fees and costs. The final judgment totaled $1,744,877.36.

Defendants appeal on various grounds, arguing the final judgment should be vacated or, alternatively, reduced to eliminate the commissions awarded for the lease of Unit A. For the reasons that follow, we affirm.

The underlying facts and procedural history are well known to the parties and need not be recited at length here. Succinctly stated, on October 19, 2018, the parties entered an Exclusive Right to Lease and/or Sell Agreement ("the

A-1604-24

listing agreement"). The term of the agreement ran from October 19 to December 31, 2018, during which time defendants granted Blau "the exclusive, noncancelable and sole right to LEASE and/or SELL the herein-mentioned property."

The listing agreement identified the subject property as 219-297 Getty Avenue. The agreement described the size of the property as a "±750,000 SF Warehouse with . . . 80,000 SF [W]arehouse Space 2, 8,197 SF Mezz Area, 20,186 2nd Floor, 29,515 SF Mezz Available for Lease." Underneath this description, there was a handwritten note stating, "exclusive is for 80,000 sf vacant space and mezz space on corner of Thomas St. & Getty Ave."

The listing agreement also detailed when commissions to Blau would be owed. As noted in the block quote below, certain language was crossed out of the agreement.[1]

> 1. a. . . . a commission equal to [five] percent of the total aggregate rental in the event said property or any portion thereof is leased during the Term through [plaintiff], the undersigned, or any other broker, agent, third party or others. It is understood that this commission shall be due when leases are signed by both

[1] It is unclear from the trial testimony whether the language was struck by George Valiotis, a vice-president of Alma, or by or at the behest of Efstathios "Steve" Valiotis, the majority owner of Getty. Because George and Steve Valiotis share the same surname, we henceforth refer to them by their first names for clarity, no disrespect is intended.

parties (Owner and Tenant) and payable in full when the lease term commences. All past-due accounts will be charged [one and a half percent] per month until paid. . . . Although [plaintiff] will work to acquire a creditworthy tenant, [plaintiff] does not guarantee a tenant's performance under the owner's lease.

b. Whether or not any Tenant referenced above, its successors, assigns, their respective nominees or others continue in occupancy beyond the original term stipulated in any lease, the undersigned agrees to pay [plaintiff] a commission of [five percent] of the total aggregate amount of rent, including any security deposit collected as rent, ~~for any options, renewals, extensions, expansions, the taking of additional space or otherwise at this property or any other property of [defendants], [defendants'] affiliates, or the affiliates or others of any principal of [defendants]. Such commission shall be deemed earned and payable at the time any agreement is entered into for any such options, renewals, extensions, expansions, the taking of additional space or otherwise.~~

c. A commission equal to [five percent] of the total aggregate rental shall be due [plaintiff] as stated by the undersigned . . . in the event any other property of [defendants], [defendants'] affiliates or the affiliates or others of any principal of [defendants] is leased during the Term, arising out of the introduction of the Tenant to [defendants] by [plaintiff] or any other broker, agent, third party or others during the Term in connection with leasing the subject property.

Defendants also crossed out section 9 of the listing agreement, which had provided for automatic renewals.

4

Section 5 of the listing agreement specified a six-month extension "tail" period for commissions on tenants that Blau introduced during the term, as follows:

> The undersigned . . . agrees that a commission shall be due [plaintiff] at the rates provided herein if [plaintiff], the undersigned, or any other person, broker, agent, firm, corporation or third party enters into a LEASE and/or SALE or an agreement to LEASE and/or SELL this property, or any portion thereof, or any other property of [defendants], [defendants'] affiliates, or the affiliates of any principal or others of [defendants] <u>within Six (6) Months after the expiration of the Term if said transaction is consummated with a person, entity, firm, corporation or their respective nominees to whom the property was submitted or introduced by [plaintiff], or any other broker, agent, firm, corporation or third party during the Term, and if the name of said person or entity has been disclosed to the undersigned in writing during the Term or within Ten (10) Days after the expiration of the Term</u>.

> [(Emphasis added).]

Defendants did not make any changes or alterations to section 5.

Section 6 of the listing agreement stated that Blau would "promote, advertise, publicize and erect signs on the subject property," and that defendants, in turn, agreed to refer to Blau:

> all inquiries regarding the selling, leasing or other of the property from other real estate brokers or prospective buyers, tenants, attorneys and other third parties, so that they may be handled in a professional

A-1604-24

> manner in the best interests of [defendants]. All negotiations shall be conducted solely by [plaintiff] or under [plaintiff's] direction subject to [defendants'] review and final approval.

Defendants did not revise section 6.

Section 10, which defendants also did not alter, stated that in the event defendants defaulted under the agreement, Blau was entitled to recover expenses, including reasonable attorneys' fees. Despite defendants' modifications, the listing agreement was acceptable to Blau. Soon after Steve, acting as Getty's principal, and Blau's president both signed the agreement.

Two brokers employed by Blau, who were involved in the deal, testified that it was their understanding that they had authority to lease the entire property. On the other hand, George testified that the commission agreement was only for a portion of the property and not intended to cover all 750,000 square feet. Likewise, Steve testified that plaintiff only had authority to lease the space on the corner of Thomas Street and Getty Avenue, i.e., Unit D.

As of the date the parties signed the commission agreement, there was an 88,000 square foot space (the aforesaid "Unit D") that was vacant and available to lease. According to Blau, it understood that there was an additional 80,000 square foot unit (the aforesaid "Unit A") with current tenants, which was going to become available on June 20, 2019.

6

A-1604-24

After the listing agreement was signed, Blau began marketing the property, including both Units A and D. It created marketing materials, placed an advertising banner on the premises, conducted showings, and corresponded with prospective tenants.

Eventually a lease was entered into between defendants and a commercial tenant, GTI, New Jersey, LLC ("GTI"). GTI was a manufacturer and retailer of cannabis consumer goods.

In December 2018, the New Jersey Department of Health ("DOH") authorized GTI to proceed with its application for a vertically integrated alternative treatment center in Paterson. The DOH gave GTI thirty days to locate and secure a property for its operations. According to the trial testimony, GTI learned of Blau's listing for defendants' premises on or about December 21, 2018.

On January 15, 2019--fifteen days after the expiration of the listing agreement--defendants entered into a lease with GTI for 88,000 square feet (Unit D) and an additional 80,000 square feet (Unit A). Unit A was designated as "additional space" to be delivered later, which ultimately did not occur due to occupancy by other tenants. Blau sought commissions on the lease.

A-1604-24

After defendants refused to pay Blau the sum it requested for commissions, Blau filed suit in the Law Division, seeking a declaration of its contractual rights and recovery of commissions, interest, and attorney's fees. During the litigation, defendants engaged in negotiations to sell the warehouse, which prompted Blau to impose a lis pendens on the property. A pretrial judge ordered defendants to escrow[2] nearly $1 million from a property sale, as security for any potential judgment, and the lis pendens was lifted.

The bench trial commenced in June 2023 and took place over eight intermittent trial days, with extensive documentary and testimonial evidence. Among other things, the judge found that the testimony of Blau's two brokers was credible, but that George's testimony was contradicted in various respects by Steve's, and Steve himself "was not credible in many aspects of his testimony."

On August 7, 2024, the trial judge issued a forty-nine-page written opinion, which she amplified in a further opinion on December 11, 2024, addressing various post-trial issues. As we noted above, the judge awarded Blau commissions for both Unit D and Unit A, prejudgment interest, and attorney's

---

[2] We learned at oral argument on the appeal that defendants chose not to place the escrowed funds in an interest-bearing account.

fees, totaling $1,744,877.36. The judgment was issued jointly and severally against both Getty, the property owner, and Alma, the property manager.

In essence, the trial judge found that the listing agreement was enforceable and covered leases executed within the six-month extension period, including GTI's lease. The judge determined that Blau had satisfied notification and introduction requirements under the agreement, and that the parties' conduct showed an intent to include Unit A as part of the demised premises. The judge further concluded that commission payment was triggered by lease execution, not the actual delivery of space.

Prejudgment interest was awarded through the date of the final judgment, as the judge recognized that Blau had lacked access to the escrowed funds for several years. The judge awarded attorney's fees and costs to Blau pursuant to the fee-shifting provision in the agreement since Blau had prevailed.[3]

On appeal, defendants have raised the following arguments, as we have reorganized them: (1) the trial court erred in awarding commissions on the Unit A space because it was not part of the demised premises; (2) the court erred in awarding commissions on the Unit D space because Blau was not the "efficient

---

[3] Although defendants argue on appeal that the fee award should be reduced if commissions on the Unit A are vacated, defendants do not contest the computation of the hourly rates or billable hours approved by the trial court.

A-1604-24

procuring cause" of the GTI lease and was "not vigilant" in adhering to the agreement's notice requirement, (3) prejudgment interest should have been halted once the escrow funds were deposited on March 23, 2023, and (4) the attorneys fees award must be reduced to eliminate fees on the Unit A facet of the case.

We consider these arguments based on well-established principles. An appellate court reviews "the trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). The reviewing court should not "disturb the factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Ibid. (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)).

Moreover, "'[d]eference is especially appropriate when [as here] the evidence is largely testimonial and involves questions of credibility.'" Cumberland Farms, Inc. v. New Jersey Dep't. of Env't Prot., 447 N.J. Super. 423, 437 (App. Div. 2016) (quoting Seidman, 205 N.J. at 169). Rulings on pure questions of law, however, are reviewed on appeal de novo. Manalapan Realty,

L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); see also In re Est. of Jones, 259 N.J. 584, 595 (2025).

The parties' brokerage agreement must be evaluated under traditional principles of contract law.  In general, "a real estate broker's claim to a commission depends on a valid contract."  Harper-Lawrence, Inc. v. United Merchs. & Mfrs., Inc., 261 N.J. Super. 554, 577 (App. Div. 1993).  To prevail on a claim for breach of contract, a party must establish:  (1) the parties entered into a binding agreement; (2) the plaintiff abided by the agreement; (3) the defendant failed to perform obligations under the contract; and (4) the plaintiff suffered damages due to the defendant's breach.  See Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019).

"[C]ourts enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances, and the underlying purpose of the contract.'" Est. of Jones, 259 N.J. at 595 (alteration in original) (quoting In re Cnty. of Atlantic, 230 N.J. 237, 254 (2017)).  "'[I]f the contract into which the parties have entered is clear, then it must be enforced' as written."  Cnty. of Atlantic, 230 N.J. at 254 (alteration in original) (quoting Maglies v. Est. of Guy, 193 N.J. 108, 143 (2007)).  On the other hand, "[w]here an agreement is ambiguous, 'courts will consider the parties' practical construction of the

contract as evidence of their intention and as controlling weight in determining a contract's interpretation.'" Id. at 255 (quoting Cnty. of Morris v. Fauver, 153 N.J. 80, 103 (1998)).

As part of their legal arguments to overturn the trial court's finding of breach, defendants have invoked the "efficient procuring cause doctrine." The concept is an equitable doctrine that allows a broker to earn a commission if they caused a party to negotiate a contract and the party was ready, willing, and able to consummate the transaction. See De Benedictis v. Gerechoff, 134 N.J. Super. 238, 242 (App. Div. 1975); First N.H. Corp. v. Van Syckle, 37 N.J. Super. 469, 472 (App. Div. 1955).

However, here, there is no need to reach the issue of whether Blau was the efficient procuring cause of the lease because the listing agreement clearly specified the circumstances under which Blau earned a commission. See De Benedictis, 134 N.J. at 244 (holding that the determinative factor in the issue of commissions is whether the parties' agreement required the broker to be the procuring cause of the transaction or whether a mere introduction sufficed); see also Leadership Real Est., Inc. v. Harper, 271 N.J. Super. 152, 180 (Law Div. 1993) (noting that agreements with similar six-month extension periods "have generally been construed to require payment of the broker's commission on sales

made within the extension period even where the broker is unable to prove that he or she was the efficient producing cause of the sale"). Notably, the listing agreement did not require Blau to be the "efficient procuring cause" of GTI executing a lease with defendants.

Having applied these principles to the record in this case, we affirm the trial court's decision and the terms of the final judgment, substantially for the cogent reasons expressed by the trial judge, the Honorable Cynthia D. Santomauro, J.S.C., in her August 2024 and December 2024 statements of reasons. We add only a few comments.

A core aspect of the defendants' arguments is their contention that the parties did not intend to have the space in Unit A eligible for commissions. In this regard, defendants stress the language in section 1(b) of the agreement that was crossed out. But that cross-out did not effectuate an elimination of Unit A from the contract, when it is properly viewed as a whole. Other language that was not struck from the agreement is inconsistent with defendants' position that they never intended for Unit A to be included. For instance, section 3 describes the subject property as being a "750,000 square foot warehouse." Furthermore, section 5 states that Blau would be entitled to a commission for the lease or sale

A-1604-24

of "this property, or any portion thereof, or any other property of [defendants]." Inexplicably, this language was not struck.

Because of this inconsistency, the trial court correctly determined an ambiguity existed and properly considered the evidence of the parties' intent as to whether they contemplated that Blau would earn a commission for leasing each of the two units within the property. From our own review of the record, the judge reasonably concluded that based on the parties' testimony, the testimony from GTI's representative, and the emails and text messages presented as evidence, it was intended for Blau to market the entire property, including Unit A.

The judge had sufficient evidence to conclude defendants agreed to allow Unit A to be part of the leased premises, even though they ultimately were unable to deliver possession to GTI. We also must bear in mind that the judge, who had the first-hand opportunity to observe the testifying witnesses, found Blau's witnesses to be credible and defendants' main witnesses less so. We defer to that credibility assessment. Seidman, 205 N.J. at 169.

Furthermore, the lease modification with GTI extending the lease to alternative space was signed in July 2019 after the expiration of the six-month

14

tail of the brokerage agreement. Hence, the rationale for denying commissions on the lease modification space is different than that for Unit A.

We also concur with the trial judge that the notice provisions within section 5 of the agreement did not preclude Blau's entitlement to a commission. Section 5 did not require Blau to send defendants a post-expiration protection letter, but rather only required that the identity of the tenant was disclosed in writing. The record established that, at the latest, as of January 9, 2019, when George forwarded a draft lease to Blau's employee, defendants were aware of GTI's interest in the premises and involved Blau in the transaction. Moreover, Steve testified he received a call in December 2018 regarding GTI leasing the premises. Accordingly, the judge reasonably concluded that defendants were on timely notice within ten days of the commission agreement's expiration that GTI was a prospective tenant.

Section 5 also did not require Blau to make the introduction of the prospective tenant to defendants. Instead, it stated the tenant could be introduced by Blau "or any other broker, agent, firm, corporation <u>or third party</u>"(emphasis added). Even if defendants are correct that officials from the City of Paterson introduced GTI to the property on December 21, 2018, that

would not change the fact that under the express terms of the agreement, Blau is owed a commission under the circumstances presented.

We further note that under section 6 of the listing agreement, defendants were required to forward all leasing inquiries from third parties to Blau. Thus, defendants had an obligation to forward the City's inquiry to Blau because the listing agreement had not yet expired in December of 2018.

Lastly, we discern no reason to alter the awards of prejudgment interest, nor the counsel fee award. Although defendants could not use the escrowed funds until the disposition of the case, neither could Blau. As we noted above, defendants chose not to have the funds earn interest during what proved to be a long escrow period. And, since we have not reduced the commissions award, the counsel fee calculation need not be revised.

In summary, defendants have not demonstrated that the "factual findings and legal conclusions of the trial judge . . . are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . ." Seidman, 205 N.J. at 181 (internal quotation omitted).

A-1604-24

To the extent we have not addressed above any additional arguments[4] presented on appeal, they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[4] We decline to adopt Blau's alternative argument that defendants are judicially estopped from seeking commissions because they attempted in separate litigation against GTI to make GTI responsible for any commissions it ultimately is deemed to owe in this case.